# EXHIBIT A

JUDGE BATTS                    **07 CV    4655**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
DEIULEMAR COMPAGNIA
DI NAVIGAZIONE SPA

                        Plaintiff,                07 CV

 -v-                                                        **VERIFIED COMPLAINT**

OVERSEAS WORLDWIDE HOLDING GROUP,
GULF OVERSEAS GENERAL TRADING LLC,
GULF OVERSEAS LLC, OVERSEAS SHIPPING
AGENCIES, MOS OVERSEAS SHIPPING
VERMITTLUNG GMBH, MAJDPOUR BROS
CUSTOMS CLEARANCE, MAJDPOUR BROS
INTERNATIONAL SEA & LAND TRANSPORT
S.A., and BORU INTERNATIONAL FREIGHT
FORWARDING,
                          Defendants.
-----------------------------------------------------------------x

      Plaintiff, DEIULEMAR COMPAGNIA DI NAVIGAZIONE SPA (hereinafter

"DEIULEMAR"), by its attorneys, CHALOS, O'CONNOR & DUFFY, L.L.P., as and

for its Verified Complaint against Defendants, OVERSEAS WORLDWIDE HOLDING

GROUP, GULF OVERSEAS GENERAL TRADING LLC, GULF OVERSEAS LLC,

OVERSEAS SHIPPING AGENICES, MOS OVERSEAS SHIPPING VERMITTLUNG

GMBH, MAJDPOUR BROS CUSTOMS CLEARANCE, MAJDPOUR BROS

INTERNATIONAL SEA & LAND TRANSPORT S.A., and BORU INTERNATIONAL

FREIGHT FORWARDING, alleges upon information and belief as follows:

<u>JURISDICTION</u>

      1.     The Court has subject matter jurisdiction by virtue that the underlying

claim herein is an admiralty and maritime claim within the meaning of Rule 9(h) of the

Federal Rules of Civil Procedure and within the admiralty and maritime jurisdiction of this Court under 28 U.S.C. § 1333.

THE PARTIES

2.    At all times material hereto, Plaintiff, DEIULEMAR, was and still is a foreign business entity duly organized and existing pursuant to the laws of a foreign country, with an office and principal place of business at Torre del Greco, Naples, Italy.

3.    At all times material hereto, Defendant, OVERSEAS WORLDWIDE HOLDING GROUP (hereinafter "OWHG"), was and still is a foreign business entity duly organized and existing pursuant to the laws of a foreign country, with an office and principle place of business at 2nd Floor, Kafrang Building, No. 135, North Kheradmand Avenue, Tehran – 15859, Iran.

4.    At all times material hereto, Defendant GULF OVERSEAS GENERAL TRADING LLC (hereinafter "GOGT"), was and still is a foreign business entity duly organized and existing pursuant to the laws of a foreign country, with an office and principle place of business at Dubai, United Arab Emirates.

5.    At all times material hereto, Defendant GULF OVERSEAS LLC (hereinafter "GO"), was and still is a foreign business entity duly organized and existing pursuant to the laws of a foreign country, with an office and principle place of business at Dubai, United Arab Emirates.

6.    At all times material hereto, Defendant OVERSEAS SHIPPING AGENCIES (hereinafter "OSA"), was and still is a foreign business entity duly organized and existing pursuant to the laws of a foreign country, with an office and principle place

of business at 2nd Floor, Kafrang Building, No. 135, North Kheradmand Avenue, Tehran – 15859, Iran.

7.    At all times material hereto, Defendant MOS OVERSEAS SHIPPING VERMITTLUNG GMBH (hereinafter "MOS"), was and still is a foreign business entity duly organized and existing pursuant to the laws of a foreign country, with an office and principle place of business at Neuer Wall 8, D-20354, Hamburg, Germany.

8.    At all times material hereto, Defendant MAJDPOUR BROS CUSTOMS CLEARANCE (hereinafter "MBCC"), was and still is a foreign business entity duly organized and existing pursuant to the laws of a foreign country, with an office and principle place of business at 2nd Floor, Kafrang Building, No. 135, North Kheradmand Avenue, Tehran – 15859, Iran.

9.    At all times material hereto, Defendant MAJDPOUR BROS INTERNATIONAL SEA & LAND TRANSPORT S.A. (hereinafter "MBSL"), was and still is a foreign business entity duly organized and existing pursuant to the laws of a foreign country, with an office and principle place of business at 2nd Floor, Kafrang Building, No. 135, North Kheradmand Avenue, Tehran – 15859, Iran.

10.    At all times material hereto, Defendant BORU INTERNATIONAL FREIGHT FORWARDING (hereinafter "BIFF"), was and still is a foreign business entity duly organized and existing pursuant to the laws of a foreign country, with an office and principle place of business at 2nd Floor, Kafrang Building, No. 135, North Kheradmand Avenue, Tehran – 15859, Iran.

<u>FACTS AND CLAIM</u>

11.    On or about June 4, 2003, DEIULEMAR, as owner, and GOGT, as charterer, entered into a time charter-party for the M/V GIOVANNA IULIANO for a time charter trip via safe port(s), safe berth(s), with the intention of carrying steel products from the Black Sea to Iran.

12.    The subject time charter-party agreement, memorialized on a New York Produce Exchange (NYPE) charter-party form, is a maritime contract.

13.    Pursuant to the terms and conditions of the time charter-party agreement, (specifically Clause 2), the parties agreed that "whilst on hire the Charterers shall provide and pay for all the fuel except as otherwise agreed, Port Charges, compulsory Pilotages, Agencies, Commissions…and all other usual expenses…"

14.    During the voyage contemplated by the time charter agreement, it was necessary for the vessel to transit the Suez Canal. As a result, the vessel incurred various expenses including transiting dues, mooring expenses and other expenses for the vessel's transit through the Suez Canal on or about July 14-15, 2003.

15.    Specifically, the vessel incurred a total of US$178,943.76 of expenses at the Suez Canal.

16.    In accordance with Clause 2 of the time charter-party, these expenses are to be paid by the charterer, GOGT. However, GOGT failed, refused and/or otherwise neglected to do so.

17.    Thereafter, on or about February 18, 2004, DEIULEMAR received notice that Messrs Sphinx Shipping Agency, (agents at the Suez Canal), had instituted legal proceedings against DEIULEMAR as owner of the M/V GIOVANNA IULIANO as a result of GOGT's failure to pay the expenses incurred on or about July 14-15, 2003.

18.    Again, despite further repeated demands for payment of these expenses, Defendant GOGT, in breach of the terms of the time charter-party agreement, has failed, neglected and/or otherwise refused to pay the expenses incurred by them at the Suez Canal as a result of the M/V GIOVANNA IULIANO's transit of the canal on or about July 14-15, 2003.

19.    In accordance with the terms of the time charter-party agreement, disputes arising out of the time charter-party are to be resolved by arbitration proceedings in London.

20.    London arbitration provides that the successful party is entitled to interest, costs and legal fees. As best as can be determined at this time, interest, costs and legal fees incurred and to be incurred will be an amount not less than US$125,000.00. Therefore, DEIULEMAR's total claim is US$303,943.76.

21.    Upon information and belief, at all material times, there existed such unity of ownership and interest between Defendant GOGT and Defendants OWHG, GO, OSA, MOS, MBCC, MBSL and BIFF that no separation exists between them and the corporate form of Defendant GOGT has been disregarded such that Defendant GOGT primarily transacted the business of Defendants OWHG, GO, OSA, MOS, MBCC, MBSL and BIFF.

22.    Upon information and belief, at all material times, Defendants OWHG, GO, OSA, MOS, MBCC, MBSL and BIFF chartered the M/V GIOVANNA IULIANO in the name of Defendant GOGT such that Defendants OWHG, GO, OSA, MOS, MBCC, MBSL and BIFF were the charterers of the M/V GIOVANNA IULIANO.

5

23.    Upon information and belief, at all material times, Defendant GOGT and Defendants OWHG, GO, OSA, MOS, MBCC, MBSL and BIFF have overlapping ownership, management, personnel and purposes such that Defendant GOGT and Defendants OWHG, GO, OSA, MOS, MBCC, MBSL and BIFF did not operate at arms length.

24.    Upon information and belief, at all material times, Defendant GOGT and Defendants OWHG, GO, OSA, MOS, MBCC, MBSL and BIFF have had common addresses, common contact information such that the Defendant GOGT had no independent corporate identity from the Defendants OWHG, GO, OSA, MOS, MBCC, MBSL and BIFF.

25.    Upon information and belief, at all material times, there has been an intermingling of funds between Defendant GOGT and Defendants OWHG, GO, OSA, MOS, MBCC, MBSL and BIFF.

26.    Upon information and belief, at all material times, Defendants OWHG, GO, OSA, MOS, MBCC, MBSL and BIFF have dominated, controlled and used the Defendant GOGT for their own purposes such that there is no meaningful difference between the several entities.

27.    Upon information and belief, at all material times, Defendants OWHG, GO, OSA, MOS, MBCC, MBSL and BIFF have disregarded the corporate form of Defendant GOGT to the extent that Defendants OWHG, GO, OSA, MOS, MBCC, MBSL and BIFF were actually carrying on GOGT's business and operations as if the same were their own, or vice versa.

28.    Upon information and belief, Defendant GOGT utilizes the Defendants OWHG, GO, OSA, MOS, MBCC, MBSL and BIFF to transfer funds through, to and from the Southern District of New York on its behalf.

29.    Upon information and belief, there are reasonable grounds to conclude that the Defendants OWHG, GO, OSA, MOS, MBCC, MBSL and BIFF are the alter-egos of Defendant GOGT and, therefore, Plaintiff DEIULEMAR has a valid prima facie *in personam* claim against Defendants OWHG, GO, OSA, MOS, MBCC, MBSL and BIFF based upon alter ego liability.

### BASIS FOR ATTACHMENT

30.    Defendants cannot be found within this district within the meaning of Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure, but Defendants are believed to have or will have during the pendency of this action, certain assets, accounts, freights, monies, charter hire, credits, effects, payment for bunkers, goods or services, bills of lading, cargo and the like belonging to or claimed by the Defendants within this District held by various parties, as garnishees, including by not limited to electronic fund transfers.

31.    Plaintiff believes that some of these assets, to wit:  bank accounts; payments from the purchasers of cargoes; freight and/or hire payments to or from owners of vessels, or charterers, to Defendants, GOGT, OWHG, GO, OSA, MOS, MBCC, MBSL and BIFF, and/or Clearing House Interbank Payment System (CHIPS) credits or funds being transferred through intermediary banks, are located in this District in the possession of garnishees, including ABN AMRO BANK, American Express Bank, Bank of America, Bank of China, Bank of New York, Bank of Tokyo Mitsubishi Ltd.,

Barclay's Bank, BNP Paribas SA, Calyon, Calyon Financial, Inc., Chase Manhattan
Bank, Citibank N/A, Credit Suisse Securities (USA) LLC, Deutsche Bank, HSBC (USA),
JP Morgan Chase Bank, Mashreqbank, Societe Generale, Standard Chartered Bank, UBS
AG, U.S. Bank, Wachovia Bank, Wells Fargo Bank, CHIPS and possibly other banks or
financial institutions located in New York.

WHEREFORE, Plaintiff prays:

A.     That process in due form of law issue against the Defendants, citing them
to appear and answer under oath all, and singular, the matters alleged in the Verified
Complaint;

B.     That since the Defendants cannot be found within the District, as set forth
in the Declaration of George M. Chalos, and pursuant to Rule B and Rule E of the
Supplemental Rules of Certain Admiralty and Maritime Claims, this Court issue an Order
directing the Clerk of Court to issue Process of Maritime Attachment and Garnishment
pursuant to Rule B and Rule E of the Supplemental Rules for Certain Admiralty and
Maritime Claims, attaching all of Defendants' tangible or intangible property or any other
funds held by any garnishees in the district which are due and owing, or other property of
the Defendants, up to the amount of USD $607,887.52 to secure and satisfy the Plaintiff's
claims, and that all persons claiming any interest in the same be cited to appear and
pursuant to Supplemental Admiralty Rule B and Rule E answer the matters alleged in the
Complaint;

C.     That Plaintiff may have such other, further and different relief as may be
just and proper.

Dated: Port Washington, New York
      June 1, 2007

                        CHALOS, O'CONNOR & DUFFY, L.L.P.
                        Attorneys for Plaintiff
                        DEIULEMAR COMPAGNIA DI
                        NAVIGAZIONE SPA

By:      _____
                        George M. Chalos (GC-8693)
                        366 Main Street
                        Port Washington, New York 11050
                        Tel: (516) 767-3600
                        Fax: (516) 767-3605
                        Email: gmc@codus-law.com

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------x

DEIULEMAR COMPAGNIA
DI NAVIGAZIONE SPA

                    Plaintiff,                07 CV

-v-

                                                    **VERIFICATION OF**
                                                    **COMPLAINT**

OVERSEAS WORLDWIDE HOLDING GROUP,
GULF OVERSEAS GENERAL TRADING LLC,
GULF OVERSEAS LLC, OVERSEAS SHIPPING
AGENCIES, MOS OVERSEAS SHIPPING
VERMITTLUNG GMBH, MAJDPOUR BROS
CUSTOMS CLEARANCE, MAJDPOUR BROS
INTERNATIONAL SEA & LAND TRANSPORT
S.A., and BORU INTERNATIONAL FREIGHT
FORWARDING,
                    Defendants.
---------------------------------------------------------x

       Pursuant to 28 U.S.C. §1746, GEORGE M. CHALOS, Esq., declares under the penalty of

perjury:

       1.      I am a Member of the law firm of CHALOS, O'CONNOR & DUFFY, L.L.P.,

counsel for the Plaintiff, DEIULEMAR COMPAGNIA DI NAVIGAZIONE S.P.A., herein;

       2.      I have read the foregoing Verified Complaint and know the contents thereof; and

       3.      I believe the matters to be true based on documents and information obtained

from employees and representatives of the Plaintiff through its agents, underwriters and

attorneys.

       4.      The reason that this verification was made by deponent and not by the Plaintiff is

because Plaintiff is a foreign corporation, whose officers are not in this district, and whose

verification cannot be obtained within the time constraints presented by the circumstances of this

case.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: Port Washington, New York
June 1, 2007

CHALOS, O'CONNOR & DUFFY, L.L.P.
Attorneys for Plaintiff
DEUILEMAR COMPAGNIA DI
NAVIGAZIONE S.P.A.

By: _____
George M. Chalos (GC-8693)
366 Main Street
Port Washington, New York 11050
Tel: (516) 767-3600
Fax: (516) 767-3605
Email: gmc@codus-law.com

2

# EXHIBIT B



**Report Prepared For:**        **Charles Taylor & Co Limited**
Michael Steer

**On behalf of:**               **Deiulemar Shipping Spa**

**Reference:**                  **GP00930**

**Date of Report:**             4th April 2008

**Subject**                     **Gulf Overseas General Trading (L.L.C)**

*Confidentiality Notice*

*The information contained in this report is provided on a strictly confidential basis to the addressee(s) by Gray Page Intelligence Services Limited ("Gray Page"). The addressee(s) shall not copy, reproduce, distribute or pass-on to third parties this report in whole or in part at any time without the express written consent of Gray Page.*

Gulf Overseas General Trading (L.L.C.)

## INSTRUCTION

On 25th March 2008 Gray Page Intelligence Services Limited received an instruction from Charles Taylor & Co Ltd to investigate the company Gulf Overseas General Trading (L.L.C.). We understand that your clients, Deiulemar Shipping Spa, are seeking an indemnity from its charterer, Gulf Overseas General Trading (L.L.C.) and have successfully attached funds belonging to TOM Shipping Vermittlung GmbH, through a rule B attachment on the basis that this company is an 'alter ego' for the subject company.

Your client is also seeking to establish if MOS Overseas Shipping Vermittlung GmbH can be shown to be an 'alter ego' of Gulf Overseas General Trading (L.L.C.). Further to this we are to confirm the links that exist between these companies and TOM Shipping Vermittlung GmbH, as it is was identified that the funds that have been attached were remitted by this entity that appeared to be operating c/o MOS Overseas Shipping Vermittlung GmbH.

In addition, an individual called Asadollah Rahimzadeh, is thought to be involved with TOM Shipping Vermittlung GmbH c/o MOS Overseas Shipping Vermittlung GmbH and your client seeks to establish in what capacity he acts and if he retains connections with his former employers.

## INVESTIGATION

### GULF OVERSEAS GENERAL TRADING (L.L.C.)

We checked the Dubai Corporate Register for Gulf Overseas General Trading (L.L.C.) (hereafter referred to as 'GOGT') and found that the company was incorporated as a limited liability company on 22nd June 1999, with the commercial registration number of 52998. GOGT was first granted a licence to operate in the UAE on 21st June 1999 and this has an expiry date of 20th June 2008.

The Registered address given for GOGT on the register is as follows:

---

Gulf Overseas General Trading (L.L.C.)



Khalid Alattar Tower

Al Maktoum Street

Rigga Al Bateen

P.O. Box 41309

Dubai, UAE

Tel:    +971 224 2529

Fax:    +971 222 7974

GOGT has an authorised share capital of AED 3,000,000 (approximately US$820,000). The shareholders are:

| Name | Nationality | Shareholding |
|------|-------------|--------------|
| Mohamed Yousuf Murad Ali | UAE | 51% |
| Nasser Jiaffar Majd Pour | Iranian | 16% |
| Hussain Mohammed Ali Zadeh Matanagh | Iranian | 16% |
| Majid Jafar Majd Pour | Iranian | 17% |

GOGT is understood to have 4 employees and maintains a relationship with the Bank Saderat Iran (Al Maktoum).

The majority shareholder of GOGT, Mohammed Yousuf Murad Ali, is understood to be a nominee acting in accordance with UAE legislation whereby a UAE national must be the majority shareholder of companies registered in this jurisdiction. The day-to-day running of GOGT is understood to be controlled by members of the Majdpour family.

GOGT is thought to have been used as a chartering vehicle for Overseas Shipping Agencies (OSA), the group of companies understood to be controlled by the Majdpour and Barazandeh families.

We know that GOGT ran into some financial difficulties around 2005. Its chartering activities ceased around that time, although its parent group has continued to operate in the charter market under its own name and now under the name of TOM.

Gulf Overseas General Trading (L.L.C.)



During our previous investigations into GOGT we identified a company structure which showed Overseas Shipping Agencies ('OSA') to be at the head of a group of companies which not only included GOGT but also the following companies:

MOS Overseas Shipping Vermittlung GmbH

Gulf Overseas L.L.C.

Majdpour Bros Customs Clearance

Majpour Bros Int'l. Sea & Land Transport

Information from the now defunct website (www.overseasgrp.com) of OSA gives the trading address to be:

2nd Floor, Kafrang Bldg.,

No. 135, North Kheradmand Ave.,

Tehran – 15859

Iran

Tel:    +98 21 884 55 39 – 40

Fax:    +98 21 830 14 97

This information was taken from a web-page dated 09/05/2007. This page also made reference to the entity Overseas Worldwide Holding Group, which as its name implies is believed to be he holding company for the group of companies.

We have not had sufficient time to obtain information from the Iranian Corporate Register; this can of course be obtained if required.

## MOS Overseas Shipping Vermittlung GmbH

MOS Overseas Shipping Vermittlung GmbH (hereafter referred to as 'MOS') was incorporated in Hamburg, Germany as a private limited company on 11th January 1996, with the company number HRB 60389. The company was actually founded on 8th March 1995.

The registered address at which MOS is a tenant:

Gulf Overseas General Trading (L.L.C.)



Neuer Wall 8

20354 Hamburg

Tel:    +49 40 348 0326

Fax:    +49 40 348 0325

MOS has an authorised and paid up capital of EUR 120,000 and the share ownership is divided as follows:

| Name | DOB | Share Ownership (EUR) |
|------|-----|----------------------|
| Nasar Majdpour | 11/03/1958 | 30,000 |
| Tofigh Majdpour | | 30,000 |
| Sina Majdpour | 17/09/1978 | 30,000 |
| Majid Majdpour | 27/03/1954 | 30,000 |

The Managing Director with sole power of representation for MOS is given to be Tofigh Majdpour.

MOS is also understood to be a chartering vehicle used by the OSA group of companies and when we previously investigated this entity (January 2005) we identified that an individual called Mr. Rahimzath (we now understand to be Asadollah Rahimzadeh) was the Chartering Manager for MOS, based at its Hamburg offices. We also believed that Mr. Rahimzath was ultimately reporting to a Mr. Sheikian (We now understand to be Naser Sheikhian) and Toufiq Majdpour with respect to chartering decisions for the OSA group.

## TOM SHIPPING VERMITTLUNG GMBH

TOM Shipping Vermittlung GmbH (hereafter referred to as TOM) was incorporated in Hamburg, Germany on 4th September 2007 with the company number HRB 102397. According to Asadollah Rahimzadeh (hereafter referred to as 'AR') the company operates from the following address:

Forsterweg 22,

D-22525

Hamburg, Germany

Gulf Overseas General Trading (L.L.C.)

Tel: +49 40 85 85 07

We understand from the supporting documents provided with the 'Rahimzadeh Declaration', that TOM has a capital stock of EUR 45,000, which is divided between the founding partners of the company as follows:

| | |
|---|---|
| Mr. Asadollah Rahimzadeh | 15,000 EUR |
| Ms. Rasa Soufi Amlashi | 15,000 EUR |
| Ms. Akram Alizadeh Matanagh | 15,000 EUR |

We have checked with the German Register directly and we can confirm that the share capital figure agrees with Mr. Rahimzadeh. However, the directors of TOM are given to be Asadollah Rahimzadeh and Rasa Amlashi; there is no mention of Akram Alizadeh Matanagh on the Register.

## MARKET ENQUIRIES

We have made market enquiries in an attempt to demonstrate the existence of links between TOM, MOS, GOGT and the various affiliate companies linked to the Majdpour family.

During our previous enquiries, we identified that GOGT had two preferred brokers through which it fixed its dry bulk cargoes. These companies were V Ships Commercial in London and PT Gesuri Lloyd in Jakarta.

We contacted V Ships and were advised that the company no longer deals with any of the subject companies we have identified and this business used to be specifically dealt with by a broker called George Lemos who has since left V Ships and established a new company called Sea Challenger Maritime Limited. We spoke to George Lemos and were advised that he had not concluded any business with MOS or the Majdpour brothers for some time due to the political situation in Iran. Mr. Lemos lamented the lapse of this business and looked forward to its resumption in the future. We enquired about the activity of TOM in the dry cargo market and Mr. Lemos made it clear that he no longer wished to help us with our enquiries. We surmise that George Lemos is aware of the current situation regarding the



Gulf Overseas General Trading (L.L.C.)

attachment of funds relating to the *m/v Joudi* (built 1980, dwt 35,295). Consequently, as the broker associated with fixing this vessel to TOM we can understand the reluctance to discuss the situation.

We contacted PT Gesuri Lloyd and unfortunately it no longer operates a dry cargo broking department and consequently could not assist us in our enquiries.

We made several other enquires with London, Hamburg and Iranian shipbrokers. We contacted the ships agents who attended on behalf of the time charterers, Brooklands Planning Pte Ltd, of the *m/v joudi* in Selaata during loading operations in February 2008. We were advised by this agent that the principle companies involved with this shipment of fertiliser from Selaata to Iran were as follows:

| | |
|---|---|
| Time Charterers | Brooklands Planning Pte Ltd (Singapore) |
| Shippers | Lebanon Chemical Corporation (Lebanon) |
| Notify Party | Agriculture Support Service Co (Iran) |
| Carriers | TOM Shipping Vermittlung GmbH (Hamburg) |
| Receivers/Buyers | Overseas Shipping Agencies (Iran) |

According to our source the name of TOM appears on the Bill of Lading for this cargo as carriers.

We made enquiries with the cargo suppliers and shippers for the *m/v Joudi*, Lebanon Chemical Corporation (hereafter referred to as 'LCC') and were advised that it sold the cargo on a 'Free on Board' basis to the company Overseas Shipping Agencies (OSA). The vessel was nominated by OSA to LCC via e-mail from Naser Sheikhian (n.sheikhan@gmail.com). The other contact details that LCC were given for OSA were for Sina Majdpour (General Manager) as follows:

| | |
|---|---|
| Tel: | +98 21 88 34 74 47 |
| Fax: | +98 21 88 30 14 97 |

We note that the fax number is still the same as that given for OSA on its defunct website.



Gulf Overseas General Trading (L.L.C.)

LCC had learned that there were problems with discharge operations of the *m/v Joudi* in Iran and they were also aware that it had been suggested that OSA had not settled the freight account with the beneficial owners of the vessel. Further to this LCC has instructed local representatives in Iran to monitor the discharge of the *m/v Joudi*. LCC is concerned that it has a considerable despatch invoice for the account of OSA and rumours of unpaid freight have made them nervous about this invoice getting settled. We attempted to contact the local representative for LCC in Iran but were unable to do so because the local weekend has begun and there was no answer from the contact numbers provided.

### M/V TOM SHIP 1 AND M/V TOM SHIP 2

During our enquiries we were made aware of possible links between the Majdpour brothers and the following two vessels:

| Name | Tom Ship 1 | | Name | Tom Ship 2 |
|------|-----------|---|------|-----------|
| Built | 1991 | | Built | 1990 |
| Flag | Barbados | | Flag | Iran |
| Dwt | 3,962 | | Dwt | 4,210 |
| IMO | 9033701 | | IMO | 8917699 |

We identified the ships agents that dealt with the vessels on behalf of the charterers during the vessel's recent call in Mumbai, India.

We were advised by the agents dealing with *Tom Ship 1*, that she is on long term time charter to the company Metall Und Rohstoff AG (hereafter 'MUR'). We contacted MUR in Dubai and were advised that this vessel was chartered via Sea Challenger Maritime Limited of London, through a gentleman called George Lemos.

Our source at MUR further commented that Sea Challenger Maritime Limited is "simply a front for the Iranians as we cannot be seen to be trading directly with Iran". We were also told that Sea Challenger Maritime Limited is a broking company for the Majdpour brothers in Iran and that the ultimate owners of the *Tom Ship 1* are considered to be Overseas Shipping Agencies (OSA).



Gulf Overseas General Trading (L.L.C.)

Our ships agency source in Mumbai further advised us that the management of the *Tom Ship 1* and *Tom Ship 2* is controlled by the Iranian company BOSCO, also known as Bonyad Shipping Company, operating from the following address:

> First Floor - No. 24 - Gandi Street
> Tehran
> Tel: +98 21 8795211
> Fax: +98 21 8776951

Given the obvious name connection between these two vessels and TOM, we believe that the Majdpour brothers are clearly linked to the Hamburg operation.

It has also been shown during a search of court filings in the United States that in the case of Aosta Shipping Co Ltd and Mariteam Services Inc. v's Gulf Overseas General Trading LLC (Filed 19th January 2006); it was stated that GOGT and MOS were both under the direct control of Overseas Worldwide Holding Group and act as a single economic enterprise.

## CONCLUSION

We have identified that Gulf Overseas General Trading (L.L.C.) has two corporate officers in common with the company MOS Overseas Shipping Vemittlung GmbH. Also these two companies have been described in the past as 'branch offices' of the group of companies, Overseas Shipping Agencies of Tehran.

OSA is understood to be predominantly controlled by the Majdpour family, who appear prolifically as shareholders in the group's member companies.

The OSA group appears to have now established a new entity named TOM Shipping Vermittlung GmbH. We suspect that this may have related to the group wishing to distance itself from its Iranian connections due to the current political situation, or due to ongoing disputes with other parties. However, these links clearly still remain. We have traced clear evidence that this company remains connected to the Madjpour brothers and the OSA group as they are shown to be the cargo receivers on the current voyage of the *M/V Joudi*.



Gulf Overseas General Trading (L.L.C.)

Further to this the TOM name now appears to be closely linked to two recent vessel purchases, the *m/v Tom Ship 1* and *m/v Tom Ship 2*. These vessels are being operated through the same London broker as is quoting TOM cargoes. This broker has also been formerly associated with quoting cargoes for both GOGT and MOS for many years.

This concludes our initial investigations into this matter. Please do not hesitate to contact us if you wish to instruct us further or have any other requirements.

# EXHIBIT C

# BURKE & PARSONS

*Counselors at Law*



100 Park Avenue
New York NY 10017-5533
Tel +1 212 354 3815
Fax +1 212 221 1432
heard@burkeparsons.com

**TO:** MOS Overseas Shipping Vermittlung GmbH
+49 40 348 0 325

Thu 13-Sep-2007

**FROM:** Keith W. Heard

**RE:** Hawknet Ltd. v. Overseas Shipping Agencies *et al.*
Docket no. 07 CV 5912 (NRB)
Our Ref: 9000

0013.DOC

Dear Sirs:

We are attorneys for plaintiff Hawknet Ltd. in the above-captioned lawsuit which has been filed in the United States District Court for the Southern District of New York. The purpose of the lawsuit is to obtain security for Hawknet's claims arising out of a charter party with Overseas Shipping Agencies dated June 15, 2005. Under the terms of this contract, Hawknet, as disponent owner, agreed to charter three vessels, the names of which were to be nominated, to defendant, Overseas Shipping Agencies, as charterer, for the carriage of three cargoes of steel plate from Gdansk, Poland to Bandar Imam Khomeini, Iran. The MASTRO GIORGIS II was the first vessel nominated to perform under the contract.

We have taken the position in our Court papers that all of the other companies in the Majdpour group -- in addition to Overseas Shipping Agencies -- have exposure to liability on Hawknet's claim. MOS Overseas Shipping Vermittlung GmbH is one such company.

We have now been advised by HSBC Bank in New York that the Process of Maritime Attachment and Garnishment which Hawknet served on the bank has resulted in the attachment of an Electronic Funds Transfer in the amount of $3,780 being sent to your company by Borusan Lojistik Dogitim Depolama.

Please do not hesitate to contact us should you have any questions about the lawsuit or the attachment, about which you are being notified in this facsimile message.

BURKE & PARSONS

Keith W. Heard

x x x  COMMUNICATION RESULT REPORT ( SEP. 13. 2007 1:58PM )  x x x

```
                                            FAX HEADER 1:   BURKE & PARSONS NY
                                            FAX HEADER 2:   BURKE + PARSONS NY

TRANSMITTED/STORED : SEP. 13. 2007  1:57PM
FILE MODE       OPTION              ADDRESS                 RESULT        PAGE
-------------------------------------------------------------------------------
9889 MEMORY TX                      G3  :  +49403480325     OK            1/1
```

*8 9000*

```
-------------------------------------------------------------------------------
    REASON FOR ERROR
      E-1)  HANG UP OR LINE FAIL              E-2)  BUSY
      E-3)  NO ANSWER                         E-4)  NO FACSIMILE CONNECTION
      E-5)  MAIL SIZE OVER
```

# BURKE & PARSONS

*Counselors at Law*

100 Park Avenue
New York NY 10017-5533
Tel +1 212 354 3815
Fax +1 212 221 1432
heard@burkeparsons.com

**TO:** MOS Overseas Shipping Vermittlung GmbH
+49 40 348 0 325

Thu 13-Sep-2007

**FROM:** Keith W. Heard

**RE:** Hawknet Ltd. v. Overseas Shipping Agencies *et al.*
Docket no. 07 CV 5912 (NRB)
Our Ref: 9000

0013.DOC

Dear Sirs:

    We are attorneys for plaintiff Hawknet Ltd. in the above-captioned lawsuit which has been filed in the United States District Court for the Southern District of New York. The purpose of the lawsuit is to obtain security for Hawknet's claims arising out of a charter party with Overseas Shipping Agencies dated June 15, 2005. Under the terms of this contract, Hawknet, as disponent owner, agreed to charter three vessels, the names of which were to be nominated, to defendant, Overseas Shipping Agencies, as charterer, for the carriage of three cargoes of steel plate from Gdansk, Poland to Bandar Imam Khomeini, Iran. The MASTRO GIORGIS II was the first vessel nominated to perform under the contract.

    We have taken the position in our Court papers that all of the other companies in the Majdpour group -- in addition to Overseas Shipping Agencies -- have exposure to liability on Hawknet's claim. MOS Overseas Shipping Vermittlung GmbH is one such company.

    We have now been advised by HSBC Bank in New York that the Process of Maritime Attachment and Garnishment which Hawknet served on the bank has resulted in the attachment of an Electronic Funds Transfer in the amount of $3,780 being sent to your company by Borusan Lojistik Dogitim Depolama.

    Please do not hesitate to contact us should you have any questions about the lawsuit or the attachment, about which you are being notified in this facsimile message.

BURKE & PARSONS

*Keith A. Heard*

Keith W. Heard

# EXHIBIT D

Date: Fri, 4 Jan 2008 16:53:08 -0500
From: "Lilian Philiposian" <LPhiliposian@rawle.com>
To: <gmc@codus-law.com>, "Keith W Heard" <heard@burkeparsons.com>
Subject: Mos Overseas Shipping Vermittlung GMBH

Counsel,

A wire came through the Bank of New York Mellon today for funds in the
amount of $22,394.12 being wire transferred from the above entity in
Hamburg to the Steamship Mutual Underwriting Association in Bermuda.

Please advise if these funds are to be restrained, pursuant to the Writs
served on the Bank in your respective matters.

Regards,

Lilian V. Philiposian, Esquire
Rawle & Henderson, LLP
The Widener Building
One South Penn Square
Philadelphia, PA  19107
215-575-4237 · Phone
215-563-2583 - Fax
************************************************************************************************
*********************

This communication, including attachments, may contain information that is confidential and
protected by the attorney/client or other privileges. It constitutes non-public information intended
to be conveyed only to the designated recipient(s). If the reader or recipient of this
communication is not the intended recipient, or you believe that you have received this
communication in error, please notify the sender immediately by return e-mail and promptly
delete this e-mail, including attachments without reading or saving them in any manner. The
unauthorized use, dissemination, distribution, or reproduction of this e-mail, is prohibited and
may be unlawful.
************************************************************************************************
*********************

# EXHIBIT E

# *BURKE & PARSONS*

*Counselors at Law*

100 Park Avenue

New York NY 10017-5533

Tel +1 212 354 3815

Fax +1 212 221 1432

heard@burkeparsons.com

**TO:** MOS Overseas Shipping Vermittlung GmbH
+49 40 348 0 325

Mon 07-Jan-20088

**FROM:** Keith W. Heard

**RE:** Hawknet Ltd. v. Overseas Shipping Agencies *et al.*
Docket no. 07 CV 5912 (NRB)
Our Ref: 9000

0020.DOC

Dear Sirs:

We are attorneys for plaintiff Hav                    ied lawsuit which has
been filed in the United States District C              of New York. The pur-
pose of the lawsuit is to obtain security for Hawknet's claims arising out of a charter party with
Overseas Shipping Agencies dated June 15, 2005. Under the terms of this contract, Hawknet,
as disponent owner, agreed to charter three vessels, the names of which were to be nominated,
to defendant, Overseas Shipping Agencies, as charterer, for the carriage of three cargoes of
steel plate from Gdansk, Poland to Bandar Imam Khomeini, Iran. The MASTRO GIORGIS II was
the first vessel nominated to perform under the contract.

We have taken the position in our Court papers that all of the other companies in the
Majdpour group -- in addition to Overseas Shipping Agencies -- have exposure to liability on
Hawknet's claim. MOS Overseas Shipping Vermittlung GmbH is one such company.

We have now been advised by attorneys for the Bank of New York Mellon that the Proc-
ess of Maritime Attachment and Garnishment which Hawknet has been serving on the bank has
resulted in the attachment of an Electronic Funds Transfer in the amount of $22,394.12 being
sent by your company to Steamship Mutual Underwriting Association in Bermuda.

Please do not hesitate to contact us should you have any questions about the lawsuit or
the attachment, about which you are being notified in this facsimile message.

BURKE & PARSONS

Keith W. Heard

P. 1

```
x  x  x   COMMUNICATION RESULT REPORT ( JAN.  7. 2008 10:33AM )  x  x  x

                                        FAX HEADER 1:   BURKE & PARSONS NY
                                        FAX HEADER 2:   BURKE + PARSONS NY

TRANSMITTED/STORED : JAN.  7. 2008 10:32AM
FILE MODE          OPTION              ADDRESS                RESULT      PAGE
-----------------------------------------------------------------------------
2593 MEMORY TX                         G3  :   +49403480325   OK          1/1
```

```
------------------------------------------------------------------------------
REASON FOR ERROR
  E-1) HANG UP OR LINE FAIL              E-2) BUSY
  E-3) NO ANSWER                         E-4) NO FACSIMILE CONNECTION
  E-5) MAIL SIZE OVER
```

## BURKE & PARSONS

*Counselors at Law*

100 Park Avenue
New York NY 10017-5533
Tel +1 212 354 3815
Fax +1 212 221 1432
heard@burkeparsons.com

**TO:** MOS Overseas Shipping Vermittlung GmbH
+49 40 348 0 325

Mon 07-Jan-20088

**FROM:** Keith W. Heard

**RE:** Hawknet Ltd. v. Overseas Shipping Agencies *et al.*
Docket no. 07 CV 5912 (NRB)
Our Ref: 9000

0020.DOC

Dear Sirs:

We are attorneys for plaintiff Hawknet Ltd. in the above-captioned lawsuit which has been filed in the United States District Court for the Southern District of New York. The purpose of the lawsuit is to obtain security for Hawknet's claims arising out of a charter party with Overseas Shipping Agencies dated June 15, 2005. Under the terms of this contract, Hawknet, as disponent owner, agreed to charter three vessels, the names of which were to be nominated, to defendant, Overseas Shipping Agencies, as charterer, for the carriage of three cargoes of steel plate from Gdansk, Poland to Bandar Imam Khomeini, Iran. The MASTRO GIORGIS II was the first vessel nominated to perform under the contract.

We have taken the position in our Court papers that all of the other companies in the Majdpour group -- in addition to Overseas Shipping Agencies -- have exposure to liability on Hawknet's claim. MOS Overseas Shipping Vermittlung GmbH is one such company.

We have now been advised by attorneys for the Bank of New York Mellon that the Process of Maritime Attachment and Garnishment which Hawknet has been serving on the bank has resulted in the attachment of an Electronic Funds Transfer in the amount of $22,394.12 being sent by your company to Steamship Mutual Underwriting Association in Bermuda.

Please do not hesitate to contact us should you have any questions about the lawsuit or the attachment, about which you are being notified in this facsimile message.

BURKE & PARSONS

Keith W. Heard

# EXHIBIT F

 

**Jetzt privat versichern!**

Ab 59,- €* pro Monat Pr
Krankenversichert – mit
2.400 € Lohnfortzahlung

Startseite > Alle Firmen im PLZ-Gebiet 20354 > MOS Overseas Shipping Vermittlung GmbH

# MOS Overseas Shipping Vermittlung GmbH

Neuer Wall 8
20354 Hamburg
Bundesrepublik Deutschland

Handelsregister-Nr.: HRB 60389
HR-Gericht: Hamburg



## Weitere verfügbare Daten zu MOS Overseas Shipping Vermittlung GmbH

Firmenprofil                Bonitätsauskunft



**Ökologisches Investment!**
Bis zu 10% Zinsen p.a. Investieren Sie
mit dem Marktführer PROKON in
Erneuerbare Energien.



**2x Technology Review**
Technology Review: Brücke zwischen
Wissenschaft und Wirtschaft. 2x testen +
USB-Stick– nur 9€!



**Star Private Equity VI**
Top Asien-Investment: Jetzt zeichnen zu
attraktiven Konditionen

Anzeige

## Kontakt

Telefon: (040) 3480326
Telefax: (040) 3480325

Kontakt-E-Mail-Adresse:

Homepage:

## Branchen

Branchencode: 63.40.2

Hauptbranche:  Schiffsmaklerbüros und -agenturen

## Weitere Daten

Creditreform-Nr.: 2150659777
Zuständige Geschäftsstelle Creditreform:     **Hamburg**
Zuständige Industrie- und Handelskammer:     **Hamburg**

## Wollen Sie mehr wissen?

Folgende weitere Daten zu dieser Firma finden Sie im Creditreform Firmenprofil

Ausführliche Handelsregisterdaten mit Handelsregister-Nummer und Amtsgericht
Stammkapital und Mitarbeiterzahl
Tätigkeit
Namen, Adressen, Funktionen der 2 Manager
Namen der 4 beteiligten Personen, z. B. Gesellschafter, Geschäftsführer (natürliche und juristische Personen)
Angaben zur Hausbank

> **Firmenprofil kaufen!**          kostenlose Vorschau



---

### Ihr Firmeneintrag auf FirmenWissen

Präsentieren Sie Ihr Unternehmen auf
FirmenWissen und informieren Sie
potentielle Kunden über Ihre Produkte und
Leistungen:

#### Ihre Vorteile: Firmeneintrag PLUS

Optimale Platzierung bei
Internet-Suchmaschinen
Ausführliche Kontaktdaten auf den ersten Blick, mit E-Mail und Link zu
Ihrer Firmen-Homepage
Ihr Firmenlogo

> **Firmeneintrag PLUS kaufen!**      Mustereintrag

#### Ihre Vorteile: Firmeneintrag PRO

Ausführliche Kontaktdaten und Firmenlogo wie beim Firmeneintrag PLUS
Darstellung Ihrer Produkte und Dienstleistungen
Angabe von Service-Zeiten und zentraler Telefonnummer
Angabe des Absatzgebietes
Nennung von Marken, Zertifizierungen und Verbandsmitgliedschaften
Nennung von bis zu 7 Kontaktpersonen mit Telefonnummer,
E-Mail-Adresse und Funktion

> **Firmeneintrag PRO kaufen!**      Mustereintrag

---

## Haben Sie Ihre gewünschte Information nicht gefunden?

Starten Sie eine ausführliche Suche auf FirmenWissen

## Weitere Suchvorschläge

**Die folgenden Stichworte und Suchbegriffe sind mit Unternehmen der oben angezeigten Branche 63.40.2 verbunden und können für die Firmensuche nach ähnlichen Unternehmen genutzt werden:**

Befrachtungsmaklerbüros (Schiffsmaklerbüros) 20354; Klarierung von Schiffen Hamburg; Linienagenturen (Schiffsmaklerbüros) Hamburg; Sammelladungsverkehre per Seeschiff (Schiffsmaklerbüros, nicht Güterbeförderung), Schiffsmaklerbüros und -agenturen, Transportvermittlung (Schiffsmaklerbüros und -agenturen), Verkehrsvermittlung (Schiffsmaklerbüros und -agenturen) MOS Overseas Shipping Vermittlung GmbH

Wollen Sie die genannten Stichworte durch Ihre individuellen Produkte und Angebote ersetzen? Nutzen Sie die Möglichkeiten des **Firmeneintrag PRO** - kostenfrei für Creditreform-Mitglieder!

© 2008 by FirmenWissen, Verband der Vereine Creditreform e.V. - Impressum - AGB
All rights reserved. Reproduction or modification in whole or in part without expressed written permission is prohibited.

powered by neofonie

# EXHIBIT G




**CREDITREFORM**
# FIRMEN ⓦ WISSEN
DAS UNTERNEHMERPORTAL

**Jetzt privat versichern!**
Ab 59,- €* pro Monat Pr
Krankenversichert – mit
2.400 € Lohnfortzahlung

Startseite > Alle Firmen im PLZ-Gebiet 20354 > TOM Shipping Vermittlung GmbH

# TOM Shipping Vermittlung GmbH

Neuer Wall 8
20354 Hamburg
Bundesrepublik Deutschland



Handelsregister-Nr.: HRB 102397
HR-Gericht: Hamburg

## Weitere verfügbare Daten zu TOM Shipping Vermittlung GmbH

**Firmenprofil**              **Bonitätsauskunft**



VIELLEICHT SIND SIE
NOCH NICHT
AUF XING
REGISTRIERT?

XING'          Jetzt anmelden!

Anzeige

## Branchen 

Branchencode: 63.40.1
Hauptbranche: **Spedition**

## Weitere Daten

Creditreform-Nr.: 2151373488
Zuständige Geschäftsstelle Creditreform:      **Hamburg**
Zuständige Industrie- und Handelskammer:      **Hamburg**

## Wollen Sie mehr wissen?

Folgende weitere Daten zu dieser Firma finden Sie im Creditreform Firmenprofil

Ausführliche Handelsregisterdaten mit Handelsregister-Nummer und Amtsgericht
Stammkapital und Mitarbeiterzahl
Tätigkeit
Namen, Adressen, Funktionen der 2 Manager
Namen der 3 beteiligten Personen, z. B. Gesellschafter, Geschäftsführer (natürliche und juristische Personen)
Angaben zur Hausbank

‣ **Firmenprofil kaufen!**          kostenlose Vorschau



### Ihr Firmeneintrag auf FirmenWissen

Präsentieren Sie Ihr Unternehmen auf
FirmenWissen und informieren Sie
potentielle Kunden über Ihre Produkte und
Leistungen:

**Ihre Vorteile: Firmeneintrag PLUS**



Optimale Platzierung bei
Internet-Suchmaschinen
Ausführliche Kontaktdaten auf den ersten Blick, mit E-Mail und Link zu
Ihrer Firmen-Homepage
Ihr Firmenlogo

‣ **Firmeneintrag PLUS kaufen!**     Mustereintrag

**Ihre Vorteile: Firmeneintrag PRO**



Ausführliche Kontaktdaten und Firmenlogo wie beim Firmeneintrag PLUS
Darstellung Ihrer Produkte und Dienstleistungen
Angabe von Service-Zeiten und zentraler Telefonnummer
Angabe des Absatzgebietes
Nennung von Marken, Zertifizierungen und Verbandsmitgliedschaften
Nennung von bis zu 7 Kontaktpersonen mit Telefonnummer,
E-Mail-Adresse und Funktion

‣ **Firmeneintrag PRO kaufen!**     Mustereintrag

## Haben Sie Ihre gewünschte Information nicht gefunden?

Starten Sie eine ausführliche Suche auf FirmenWissen

## Weitere Suchvorschläge

**Die folgenden Stichworte und Suchbegriffe sind mit Unternehmen der oben angezeigten Branche 63.40.1
verbunden und können für die Firmensuche nach ähnlichen Unternehmen genutzt werden:**

Abfertigungsspeditionen (nicht Güterbeförderung) 20354; Auslandsspeditionen Hamburg; Ausstellung von
Transportdokumenten und Begleitpapieren (Speditionen) Hamburg; Bahnamtliche Speditionen TOM Shipping Vermittlung

GmbH; Bahnspeditionen; Binnenschifffahrtsspeditionen 20354; Binnenumschlagsspeditionen Hamburg; Dienstleistungen im Bereich Transportlogistik Hamburg; Empfangsspeditionen TOM Shipping Vermittlung GmbH; Frachtvermittlung; Grenzspeditionen 20354; Internationale Speditionen Hamburg; Logistik Hamburg; Luftfrachtagentur (Luftfrachtspedition) TOM Shipping Vermittlung GmbH; Luftfrachtexpressdienst; Luftfrachtspeditionen (nicht Güterbeförderung, nicht Luftfrachtagenten) 20354; Luftfrachtverkehr Hamburg; Möbelspeditionen (nicht Möbeltransport) Hamburg; Sammelladungsspeditionen TOM Shipping Vermittlung GmbH; Seefrachtspeditionen; Speditionen 20354; Speditionen für Umzüge Hamburg; Transportvermittlung Hamburg; Umzüge mit Speditionen TOM Shipping Vermittlung GmbH; Umzugsspedition; Verkehrsvermittlung 20354; Zollabfertigung (Zollspedition) Hamburg; Zolldeklaranten Hamburg; Zollspeditionen TOM Shipping Vermittlung GmbH

Wollen Sie die genannten Stichworte durch Ihre individuellen Produkte und Angebote ersetzen? Nutzen Sie die Möglichkeiten des **Firmeneintrag PRO** - kostenfrei für Creditreform-Mitglieder!

© 2008 by FirmenWissen, Verband der Vereine Creditreform e.V. - Impressum - AGB
All rights reserved. Reproduction or modification in whole or in part without expressed written permission is prohibited.

powered by neofonie

# EXHIBIT H

Date: Mon, 7 Apr 2008 16:36:35 -0400
From: "Keith W Heard-Burke & Parsons NY" <heard@burkeparsons.com>
To: "Michael O. Hardison" <mhardison@evw.com>
Cc: "Alan Van Praag" <avanpraag@evw.com>
Subject: TOM Shipping c/o MOS Shipping
X-Attachments: O:\CM\9000_JPS\TOM Shipping\Activity in TOM Shipping's account.pdf  *(next page)*

Dear Mike:

On behalf of Hawknet Ltd. and in connection with your client's
pending motion to vacate the attachment, we hereby request production
of the following documents:

1.  The correspondence constituting the back-and-forth negotiations
that resulted in the fixture of the M/V JOUDI under the charter party
dated February 8, 2008.

2.  The pre-fixture correspondence between Sea Challenger Maritime
Ltd. and its principal on the fixture relating to the possibility of
chartering the JOUDI and the negotiations for said fixture.

3.  All documents that would indicate the source or origin of a
transfer of Euros 1,600,000 that was received in the account
allegedly owed by TOM Shipping at Hamburger Sparkasse Bank in Hamburg
on March 17, 2008.  That transfer is reflected on the attached
statement of activity in the account.

Given the tight deadline established by Judge Buchwald in the Order
to Show Cause, we would appreciate receiving copies of these
documents by the close of business in New York tomorrow, April 8th.
If more time is needed, please let us know so we can make a joint
application to the Court to obtain some adjustment in the schedule on
your motion to vacate.

Regards,

Keith

Keith W. Heard
BURKE & PARSONS
30th floor
100 Park Avenue
New York NY 10017-5533

Tel (Direct) +1 212 354 3815
Tel (Main) +1 212 354 3800
Fax +1 212 221 1432
heard@burkeparsons.com

**Haspa**
Hamburger Sparkasse

| Umsatzübersicht | Auftraggeber TOM Shipping Vermittlung Gmb | Kontoinhaber TOM Shipping Vermittlung Gmb | Konto 1280287119 | Hamburger Sparkasse 20050550 | Druckzeitpunkt 07.04.2008 11.22.18 |
|---|---|---|---|---|---|

Alle-Umsätze vom 29.01.2008 - 07.04.2008

| Status | Buchungstag | Valuta | Empfänger / Auftraggeber | Verwendungszweck / Buchungstext | Betrag in EUR |
|---|---|---|---|---|---|
| | | | | Anfangssaldo vom 29.02.2008 | 0,00 |
| | 29.02.2008 | 29.02.2008 | FREMDWAEHRUNGS-GIROKONTO-F | AZV-REF 2008/0229/2362 | -7,50 |
| | | | | Saldo vom 03.03.2008 | -7,50 |
| | 03.03.2008 | 03.03.2008 | RECHNUNGSABSCHLUSS | SERVICEPREIS GIROKONTO | -4,95 |
| | | | | Saldo vom 17.03.2008 | -12,45 |
| | 17.03.2008 | 17.03.2008 | TOM SHIPPING VERMITTLUNG GM | UEBERTRAG | 1.600.000,00 |
| | | | | Saldo vom 18.03.2008 | 1.599.987,55 |
| | 18.03.2008 | 18.03.2008 | BROOKLANDS PLANNING PTE LTD | AZV-REF 2008/0318/0692 | -1.528.184,77 |
| | | | | Saldo vom 19.03.2008 | 71.802,78 |
| | 19.03.2008 | 19.03.2008 | HK 9593730121 | AZV-REF 2008/0319/0933 | -30,00 |
| | | | | Saldo vom 01.04.2008 | 71.772,78 |
| | 01.04.2008 | 01.04.2008 | RECHNUNGSABSCHLUSS | HABENZINSEN | 34,21 |
| | 01.04.2008 | 01.04.2008 | RECHNUNGSABSCHLUSS | SERVICEPREIS GIROKONTO | -5,25 |
| | 01.04.2008 | 01.04.2008 | FREMDWAEHRUNGS-GIROKONTO-F | AZV-REF 2008/0401/2480 | -7, |
| | | | | Endsaldo vom 01.04.2008 | 71.794, |

Erläuterung zum Status: Rück oder mRück: der Umsatz wurde zurückgegeben, Um: der Umsatz wurde umgebucht

Seite 1 von 1

# EXHIBIT I

Date: Tue, 8 Apr 2008 17:08:39 -0400
From: "Michael O. Hardison" <mhardison@evw.com>
To: <heard@burkeparsons.com>
Subject: TOM Shipping

Keith


TOM Shipping believes that Hawknet already has received more than
sufficient documentation to understand that it is restraining assets of
TOM Shipping (rather than assets of MOS Overseas Shipping).



Rgds,



Mike




Michael O. Hardison

Eaton & Van Winkle LLP

3 Park Avenue

New York, NY 10016-2078

Tel:   212-561-3606

Fax:  212-779-9928

mhardison@evw.com



-----------------------------------------------------------------------
-----------------------------------------------

CONFIDENTIALITY NOTICE:  This email, and any attachments, is intended
only for the use by the named addressee or addressees and contains

legally privileged and/or confidential information.  Any review, retransmission, dissemination or other use, or taking any action in reliance upon, this information by persons or entities other than the intended recipient or recipients is prohibited.  If you receive this email in error, please contact the sender and permanently delete the original and any copy of this email from any computer as well as destroy any paper printouts.


Eaton & Van Winkle LLP maintains active anti-virus policies but accepts no liability for any damage which may be caused by any virus inadvertently transmitted by this email or any attachments to this email.

--------------------------------------------------------------------------
------------------------------------------------------------

# EXHIBIT J

Equasis - Ship search - Result list    http://www.equasis.org/equasis?...restrictedShipInfo?fs=ShipList

# Ship info

| | |
|---|---|
| **IMO number :** | 9033701 |
| **Name of ship :** | TOM SHIP 1 |
| **Call Sign :** | 8PVB |
| **Gross tonnage :** | 3236 |
| **Type of ship :** | General Cargo Ship |
| **Year of build :** | 1991 |
| **Flag :** | Barbados |
| **Status of ship :** | In Service |
| **Last update :** | 2007-12-03 |

## MANAGEMENT

| Company number | Role | Name of company | Address |
|---|---|---|---|
| 9991942 | Ship manager | RPTD SOLD UNDISCLOSED INTEREST | UNKNOWN |
| 9991942 | Registered owner | RPTD SOLD UNDISCLOSED INTEREST | UNKNOWN |

## CLASSIFICATION

| Classification society | Date survey | Date next survey | Date of status | Status | Reason |
|---|---|---|---|---|---|
| Germanischer Lloyd | 2006-06-22 | 2011-06-30 | 2006-07-01 | Delivered | |

## SAFETY MANAGEMENT CERTIFICATE (IACS WHITE LIST)

| Classification society | Date survey | Date expiry | Date of status | Status | Reason | Type |
|---|---|---|---|---|---|---|
| Det Norske Veritas | 1900-01-01 | 2010-06-13 | | | | Statutory |

## P&I INFORMATION

| Name of P&I insurer | Date of inception |
|---|---|
| Steamship Mutual Underwriting Association (Bermuda) | 2007-11-23 |

© Copyright 2000-2006; Version : prodPV_2_1_2; Developed and hosted by : France-Ministry for Transport -DAM/SI

# EXHIBIT K

Keith W. Heard (KH-8578)
Burke & Parsons
100 Park Avenue
New York NY  10017-5533
(212) 354-3800

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **HAWKNET LTD.,**<br><br>                                **Plaintiff,**<br><br>        **-against-**<br><br>**OVERSEAS SHIPPING AGENCIES; OVERSEAS WORLDWIDE HOLDING GROUP;  HOMAY GENERAL TRADING CO. LLC;  MAJDPOUR BROS CUSTOMS CLEARANCE, MAJDPOUR BROS INTERNATIONAL SEA & LAND TRANSPORT S.A.;  GULF OVERSEAS LLC;  GULF OVERSEAS GENERAL TRADING LLC, MOS OVERSEAS SHIPPING VERMITTLUNG GMBH  and  TOM SHIPPING VERMITTLUNG GMBH,**<br><br>                                **Defendants.** | **SECOND AMENDED VERIFIED COMPLAINT**<br><br>**07 CV 5912 (NRB)** |

    Plaintiff, HAWKNET LTD. (hereinafter "Plaintiff"), by its attorneys Burke & Parsons, as and for its Second Amended Verified Complaint against Defendants, OVERSEAS SHIPPING AGENCIES;  OVERSEAS WORLDWIDE HOLDING GROUP;  HOMAY GENERAL TRADING CO. LLC;  MAJDPOUR BROS CUSTOMS CLEARANCE, MAJDPOUR BROS INTERNATIONAL SEA & LAND TRANSPORT S.A.;  GULF OVERSEAS LLC;  GULF OVERSEAS GENERAL TRADING LLC, MOS OVERSEAS SHIPPING VERMITTLUNG GMBH and TOM SHIPPING VERMITTLUNG GMBH, alleges upon information and belief as follows:

1.    This action involves a claim for the breach of a maritime contract, which is an admiralty and maritime claim within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure.  This action also arises under the Court's admiralty and maritime jurisdiction pursuant to 28 U.S.C. § 1333.

## THE PARTIES

2.    At all times relevant hereto, Hawknet Ltd. was and still is a foreign corporation organized and existing under and by virtue of the laws of England with an office and place of business at 27-37 St. George's Road, Wimbledon SW19 4EU, England

3.    At all times relevant hereto, Defendant Overseas Shipping Agencies ("OAS") was and still is a corporation organized and existing under and by virtue of the laws of a foreign country with an office and place of business at 2nd Floor, Kafrang Bldg., No. 135, North Kheradmand Avenue, Tehran 15859, Iran.

4.    At all times relevant hereto, Defendant Overseas Worldwide Holding Group was and still is a corporation or other business entity organized and existing under and by virtue of the laws of a foreign country with an office and place of business at 2nd Floor, Kafrang Bldg., No. 135, North Kheradmand Avenue, Tehran 15859, Iran.

5.    At all times relevant hereto, Defendant Majdpour Bros Customs Clearance ("MBCC") was and still is a corporation or other business entity organized and existing under and by virtue of the laws of a foreign country with an office and place of business at 2nd Floor, Kafrang Bldg., No. 135, North Kheradmand Avenue, Tehran 15859, Iran.

6.    At all times relevant hereto, Defendant Majdpour Bros International Sea & Land Transport S.A. ("MBISLT") was and still is a corporation organized and existing under and by virtue of the laws of a foreign country with an office and place of business at 2nd Floor, Kafrang Bldg., No. 135, North Kheradmand Avenue, Tehran 15859, Iran.

7.    At all times relevant hereto, Defendant Homay General Trading Co., LLC ("Homay") was and still is a corporation organized and existing under and by virtue of the laws of a foreign country with an office and place of business at P.O. Box 26370/52370, Dubai, United Arab Emirates.

8.   At all times relevant hereto, Defendant Gulf Overseas LLC ("GOL") was and still is a corporation organized and existing under and by virtue of the laws of a foreign country with an office and place of business at P.O. Box 41309, Dubai, United Arab Emirates.

9.   At all times relevant hereto, Defendant Gulf Overseas General Trading LLC ("GOGT") was and still is a corporation organized and existing under and by virtue of the laws of a foreign country with an office and place of business also at P.O. Box 41309, Dubai, United Arab Emirates.

10.  At all times relevant hereto, Defendant MOS Overseas Shipping Vermittlung GmbH ("MOS") was and still is a corporation or other business entity organized and existing under and by virtue of the laws of a foreign country with an office and place of business at Neuer Wall 8, D-20354, Hamburg, Germany.

11.  Defendant TOM Shipping Vermittlung GmbH ("TOM") is a corporation or other business entity organized and existing under and by virtue of the laws of a foreign country with an office and place of business at Neuer Wall 8, D-20354, Hamburg, Germany.

## THE CLAIMS

12.  Pursuant to a voyage charter party on an amended GENCON 1976 form dated at London on June 15, 2005 (the "Charter"), Plaintiff, as disponent owner, agreed to charter three vessels, the names of which were to be nominated, to Defendant OAS, as charterer, for the carriage of three cargoes of steel plate from Gdansk, Poland to Bandar Imam Khomeini, Iran.  A copy of the Charter is attached hereto as Exhibit A.

13.  At all times relevant hereto, Plaintiff was the disponent owner of the M/V MASTRO GIORGIS II (hereinafter the "Vessel"), the first vessel nominated for service under the Charter.  It turned out to be the only vessel nominated for service under the Charter because OAS defaulted in performing the balance of the contract.

14.  Under the terms of Clause 1 of the Charter, Defendant OAS bound itself to ship the cargo described as "total 75,000mt of steel plates in 3 cargoes of 25,000mts plates".  Pursuant to Box 9 of the Charter, the first part of the cargo should have been available for loading on July 1, 2005.  However, in breach of its duties, Defendant OAS failed to have cargo available for loading on July 1, 2005, resulting in delays to the

Vessel for which Plaintiff seeks to recover $78,800.16 by way of damages for detention.

15.  Bills of lading for the first shipment were signed on July 12, 2005 and pursuant to various provisions of the Charter, Defendant OAS should have paid freight for cargo shipped on the Vessel in the amount of $1,362,199.15 by July 29, 2005, at the latest.  However, said Defendant breached the Charter such that Plaintiff did not receive the freight until August 22, 2005.  Accordingly, Plaintiff seeks to recover damages in the sum of $40,554.50 by way of interest for late payment of an amount due under the Charter.

16.  Pursuant to Box 12 of the Charter, Defendant OAS contracted to nominate cargoes for two shipments in addition to the one that was transported on the Vessel. Further, under Clause 1 of the Charter, said Defendant bound itself to ship "the cargo", as described in Box 12, which is to say the entire program of three shipments. However, said Defendant only shipped one cargo of 25,000 metric tons of steel plate. As a result, Plaintiff suffered damages and claims deadfreight for the remaining cargo of 50,000 metric tons at the contractual freight rate of $55.25 per metric ton, for a total of $2,762,500.00.

17.  As an excuse for nonperformance of the remaining two shipments under the Charter, Defendant OAS alleged that a company named "Safa" had terminated a contract with said Defendant for the remaining 50,000 metric tons of steel plate to be loaded at Gdansk.  However, this is not true since Plaintiff determined that said Defendant chartered another vessel, the M/V KONKAR THEO, to carry the second cargo from Gdansk and yet another vessel to carry the third and last cargo, both of which should have been shipped on tonnage provided by Plaintiff under the Charter, had Defendant OAS not defaulted on its obligations under that contract.

18.  If Defendant OAS had performed the second and third voyages under the Charter, it would have owed Plaintiff freight in the total amount of $2,762,500.00. Plaintiff has calculated the expenses it likely would have incurred had it chartered in vessels and carried cargo for said Defendant on those two voyages.  Subtracting those expenses from the freight that would have been owed by Defendant OAS, Plaintiff has determined that it suffered a loss, in terms of lost profits, of $804,980 on the second voyage and a loss, again in terms of lost profits, of $813,665.00 on the third voyage. Thus, Plaintiff's lost profits on the two unperformed voyages add up to $1,618,645.00.

19.  As a result of Defendant OAS' breaches of the Charter, as set forth in paragraphs 14 – 18 above, Plaintiff has sustained damages in the total principal amount of $1,737,999.66, exclusive of interest, costs and attorneys' fees.

20.  Pursuant to Clause 21 of Part I and Clause 54 of the Additional Clauses of the Charter, all disputes arising thereunder are to be submitted to arbitration in London and are to be governed by English law.

21.  Plaintiff has previously commenced arbitration against Defendant OAS in accordance with the terms of the Charter.

22.  In addition to an attachment in the full principal amount of the claim as stated in Paragraph 18 above, Plaintiff also seeks an attachment over an additional sum to cover estimated interest as well as its anticipated attorneys' fees and costs, all of which are routinely recoverable under English law in London arbitration.  (*See Winter Storm Shipping, Ltd. v. TPI*, 310 F.3d 263, 265 (2d Cir. 2002), where the attachment that the Court of Appeals reinstated covered "an amount that includes interest and anticipated attorneys' and arbitrators' fees.")

23.  Plaintiff estimates, as nearly as can be presently computed, these additional damages and costs to be $631,037.13, consisting of interest in the sum of $556,037.13 (computed on the principal amount sought at a rate of 7% for a period of four years, consisting of two years since the time  of Defendant OAS' breaches and failure to perform, plus an additional two years for the arbitration to run its course), and $75,000 in estimated U.K. counsel fees, costs, and arbitrators' fees, which will be incurred in conjunction with the London arbitration and which are recoverable there.

24.  Based upon the foregoing, therefore, the total sum sought to be attached in this action with respect to Plaintiff's claims is $2,369,036.79.

25.  For its part, Plaintiff has satisfied and performed all of its obligations under the terms of the Charter.

## RELATIONSHIPS AMONG THE DEFENDANTS

26.  Upon information and belief, all of the defendants are part of an Iranian business entity named Overseas Worldwide Holding Group, which once maintained a unified website at www.overseasgrp.com.  In addition, the primary address and

principal place of business for the Group is 2nd Floor, Kafrang Bldg., No. 135, North Kheradmand Avenue, Tehran 15859, Iran.  The group is controlled and dominated by the Majdpour Brothers, who include *inter alia* Tawfiq, Sina and Majid Majdpour. ("Tawfiq" is also spelled "Tofigh" Majdpour.)

27.   Upon information and belief, the Majdpour Brothers use the various companies and business entities in the Group as interchangeable parts, depending on the business, commercial and legal needs of the Group at any given time.

28.   In the first voyage under the Charter, which is described in paragraphs 14 and 15 above, defendant OAS owed Plaintiff freight for cargo shipped on the Vessel in the amount of $1,362,199.15.  However, that amount was not paid by said defendant but, pursuant to instructions from Sina Majdpour, was paid instead by defendant Homay, which Sina Majdpour described to Plaintiff in an email dated August 20, 2005 as "our offices in Dubai."

29.   Defendant Homay sent written payment instructions to its bank, the Commercial Bank of Dubai, on August 18, 2005.  Although Homay confirmed that the bank would be "debiting our account", they also advised that this substantial transfer of funds was being made "BY ORDER OF:  MAJDPOUR BROS."

30.   Upon information and belief, defendant Homay is simply a shell corporation dominated and used by the Majdpour Brothers to transact their business.  Although Homay's letterhead stationery states that Homay maintains a website at www.whitekitchen.com, there is in fact no such website.  Instead, that domain name is being offered for sale by www.buydomains.com.

31.   At least three of the defendant corporations conduct their business out of the same office in Teheran.  Defendants Overseas Shipping Agencies, Majdpour Brothers Customs Clearance and Majdpour Brothers International Sea & Land Transport S.A. all operate out of an office on the 2nd floor of the Kafrang Building at No. 135, North Kheradmand Avenue in Tehran, Iran.  Upon information and belief, to the extent defendant Overseas Worldwide Holding Group operates as a going concern, it too operates out of the same office.

32.   In addition, two other defendants, MOS and TOM, conduct their business out of the same office at Neuer Wall 8, D-20354, Hamburg, Germany.

33.  MOS and/or other defendants control TOM and use it for their own purposes. They arranged for TOM to be established to avoid the effect of Process of Maritime Attachment and Garnishment that has issued in this action prior to the date of this Second Amended Verified Complaint.  In addition, defendant OSA and/or MOS arranged for TOM to charter the M/V JOUDI to carry a cargo of granular triple super phosphate for OSA's account from Selaata, Lebanon to Bandar Abbas, Iran in February and March of this year.  OSA and/or MOS transferred Euros into an account TOM opened at Hamburger Sparkasse Bank in Hamburg in January 2008 so that TOM could pay freight on the JOUDI in U.S. dollars.  However, the address shown for TOM in the bank's records was "c/o MOS Overseas Shipping Vermittlung GmbH, Neuer Wall 8, D-20354, Hamburg" and the presence of the MOS name on the electronic funds transfer has caused it to be attached at the Bank of New York Mellon in accordance with Process of Maritime Attachment and Garnishment issued in this action.  The funds were en route to a company in Singapore from whom TOM, for the account of other defendants herein, had chartered the JOUDI to transport the above-described cargo belonging to OSA.

34.  The Majdpour brothers have purchased two ships, the TOM SHIP 1 and the TOM SHIP 2, and have given them names to indicate that they are owned and operated by TOM when, in fact, they are controlled by OSA, MOS or other defendants.  In January 2008, MOS attempted to remit funds to Steamship Mutual Underwriting Association (Bermuda) in connection with one of these vessels but the payment was detained in New York pursuant to Process of Maritime Attachment and Garnishment issued in this action.

35.  Stock in the defendant companies is owned directly or indirectly by the Majdpour Brothers.  Specifically, Tawfiq Majdpour owns stock in defendants OAS, MBCC, MBISLT, GOL and MOS.  Majid Majdpour owns stock in defendants MBCC, MBISLT, GOGT and MOS.  Sina Majdpour owns stock in defendants OAS and GOL. Naser Jaffar Majdpour owns stock in defendant GOGT.

36.  Upon information and belief, all of the stock in defendant OAS is owned by Tawfiq and Sina Majdpour.  All of the stock in defendants MBCC and MBISLT is owned by Tawfiq Majdpour, Majid Majdpour and other Majdpour family members. All of the stock in defendant MOS is owned by Tawfiq, Sina, Majid and Naser Jaffar Majdpour.

37.   All of the stock in TOM is owned by Mr. Asadollah Rahimzadeh, Ms. Rasa Soufi Amlashi and Ms. Akram Alizadeh Matanagh.  Until very recently (and perhaps even continuing to the present), Mr. Rahimzadeh was the Chartering Manager of defendant MOS.  The address he provides for TOM is his home but publicly-available sources indicate that MOS and TOM operate out of the same office.

38.   According to TOM's articles of association, Ms. Rasa Soufi Amlashi and Ms. Akram Alizadeh Matanagh reside at Harvestehuder Weg 79, Hamburg  20149, Germany.  However, their names do not appear on any of the five nameplates at this address, although the name "Majdpour" does.  In addition, a man named Hussain Mohammed Ali Zadeh Matanagh is a shareholder in defendant GOGT, another company controlled by the Majdpours.  Upon information and belief, Ms. Amlashi and Ms. Matanagh are members of the same Majdpour family that dominates the affairs of all of the defendant corporations.

39.   Upon information and belief, the Majdpour Brothers control and dominate the activities and affairs of the defendants in their capacity as directors of said companies and otherwise.  Specifically, Tawfiq and Sina Majdpour are the only directors of defendants OAS and GOL.  Majid and Tawfiq Majdpour are the only directors of defendants MBCC, MBISLT and MOS.  Finally, Majid and Naser Majdpour form a majority of the board of directors of defendant GOGT.  Although none of the Majdpour brothers are directors of TOM, they have a family relationship with one of the directors, Ms. Rasa Soufi Amlashi, and control the activities of the other director, Mr. Asadollah Rahimzadeh, who has worked for them at MOS and may still do so.

40.   Upon information and belief, at all material times, there existed such unity of ownership and interest between Defendant OAS and the remaining defendants that no separation exists between them and the corporate form of all the defendants has been disregarded such that the Majdpour Brothers use the defendant companies interchangeably, without regard for their purported legal separateness, such that one company transacted the business of another and vice versa.

41.   Upon information and belief, at all material times, the defendants have overlapping ownership, management, personnel and purposes such that the defendants do not operate at arm's length from each other but instead operate in concert and for their mutual benefit.

VERIFIED COMPLAINT                                                    Page 8 of 12

42.   Upon information and belief, at all material times, the Majdpour Brothers have dominated, controlled and used the defendant corporations for their own purposes such that there is no meaningful difference between these entities.

43.   Upon information and belief, at all material times, the Majdpour Brothers have disregarded the corporate form of the defendants to the extent that the defendants were treated as alter egos of one another without any regard for their alleged corporate separateness.

## BASIS FOR THE ATTACHMENT

44.   Upon information and belief, and after investigation, Plaintiff has determined that the Defendants cannot be "found" within this District for the purpose of Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims, but upon information and belief one or more of the Defendants has, or will have during the pendency of this action, assets within this District comprising, *inter alia*, cash, funds, credits, wire transfers, electronic funds transfers, accounts, letters of credit, freights, sub-freights, charter hire and/or sub-charter hire, of, belonging to, due or for the benefit of the Defendants (hereinafter "Assets"), moving through garnishee banking institutions including but not limited to ABN Amro; American Express Bank; Bank of America NA; Bank of New York; Citibank; Deutsche Bank AG; HSBC Bank USA NA; JP Morgan Chase Bank; Standard Chartered Bank; Wachovia Bank and/or Mashreq Bank.

45.   The Plaintiff seeks an order from this Court directing the Clerk of Court to issue Amended Process of Maritime Attachment and Garnishment pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims, attaching, *inter alia,* any assets of the Defendants or any of them held by or in the custody or temporary possession of the aforesaid garnishees for the purpose of obtaining personal jurisdiction over the Defendants and to secure Plaintiff's claims as described above.

WHEREFORE, Plaintiff prays:

a.  That process in due form of law according to the usual practice of this Court may issue against Defendants citing them to appear and answer the foregoing, and failing such appearance and answer, to have judgment by default against the Defendants in the principal amount of the claim plus interest, costs and attorneys' fees;

b.  That since Defendants cannot be found within this District pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims, this Court issue an Order directing the Clerk of Court to issue Amended Process of Maritime Attachment and Garnishment pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims and also pursuant to the United States Arbitration Act, 9 U.S.C. §§ 1 and 8, attaching and restraining all Assets of Defendants in an amount up to and including the sum of $2,369,036.79, including but not limited to any cash, funds, credits, wire transfers, electronic funds transfers, accounts, letters of credit, freights, sub-freights, charter hire, sub-charter hire, and/or other assets of, belonging to, due or for the benefit of Defendants including, but not limited to such Assets as may be held, received or transferred in its own name or as may be held, received or transferred for its benefit at, moving through, or within the possession, custody or control of the aforesaid banking institutions including but not limited to ABN Amro; American Express Bank; Bank of America NA; Bank of New York; Citibank; Deutsche Bank AG; HSBC Bank USA NA; JP Morgan Chase Bank; Standard Chartered Bank; Wachovia Bank and/or Mashreq Bank and/or any other garnishee(s) upon whom a copy of the Amended Process of Maritime Attachment and Garnishment issued in this action may be served;

c.  That an Order be entered directing Defendants to proceed to London arbitration for the adjudication of the merits of the claims;

d.  That this Court retain jurisdiction over the matter for any further or supplemental proceedings as may be necessary in order to give effect to the aforesaid London arbitration; and

e.   For such other and further or different relief as this Court may deem just and proper in the premises.

Dated:    New York, NY
          April 9, 2008

                              BURKE & PARSONS
                              Attorneys for Plaintiff
                              HAWKNET LTD.

                         By   _____
                              Keith W. Heard (KH-8578)
                              100 Park Avenue
                              New York NY  10017-5533
                              (212) 354-3800

VERIFIED COMPLAINT                                      Page 11 of 12

# VERIFICATION

STATE OF NEW YORK          )

COUNTY OF NEW YORK     )

    Keith W. Heard, being duly sworn, deposes and says:

1. I am a member of the bar of this Honorable Court and of the firm of Burke & Parsons, attorneys for the Plaintiff.

2. I have read the foregoing Second Amended Complaint and I believe the contents thereof are true.

3. This Verification has been made by deponent and not by Plaintiff because Plaintiff is a foreign corporation, and has no officers or directors within this jurisdiction.

4. The sources of my information and belief are documents provided to me and statements made to me by representatives of the Plaintiff.

_____

Keith W. Heard

Sworn to before me this

_____ day of April, 2008

_____

Notary Public

Penny S. Martinez
Notary Public State of New York
No. 01MA4865021 Qualified in Suffolk County
Certificate Filed in New York County
Commission Expires 29 September 2010

9000_0034_proposed second amended complaint.doc

VERIFIED COMPLAINT                                                        Page 12 of 12