Michael O. Hardison
EATON & VAN WINKLE LLP
3 Park Avenue
New York, New York 10016-2078
(212) 779-9910

Attorneys for Non-Party
Tom Shipping Vermittlung GmbH

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------x
HAWKNET LTD.,

                                        Plaintiff,

    -against-

OVERSEAS SHIPPING AGENCIES,
OVERSEAS WORLDWIDE HOLDING GROUP,
HOMMAY GENERAL TRADING CO., LLC,
MAJDPOUR BROS. CUSTOMS CLEARANCE,
MAJDPOUR BROS. INTERNATIONAL SEA &
LAND TRANSPORT S.A., GULF OVERSEAS LLC,
GULF OVERSEAS GENERAL TRADING LLC, and
MOS OVERSEAS SHIPPING VERMITTLUNG GMBH,

                                        Defendants.
-----------------------------------------------------------------------x

07 Civ. 5912 (NRB)
ECF CASE

**NON-PARTY TOM SHIPPING VERMITTLUNG GMBH'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF ITS MOTION FOR AN ORDER THAT ITS FUNDS BE IMMEDIATELY RELEASED FROM PLAINTIFF'S RULE B ATTACHMENT AND IN OPPOSITION TO PLAINTIFF'S CROSS-MOTION TO AMEND**

Michael O. Hardison, Esq.
Edward W. Floyd, Esq.

## PRELIMINARY STATEMENT

Non-party TOM Shipping Vermittlung GmbH ("TOM Shipping") submits this reply memorandum of law in further support of its motion by order to show cause for an order that its funds be immediately released from Plaintiff Hawknet Ltd. ("Plaintiff")'s Rule B attachment and that the attachment be vacated as against TOM Shipping and in opposition to Plaintiff's cross-motion seeking leave to file a Second Amended Verified Complaint ("Second Amended Complaint").

## FACTS

The facts are fully set forth in the Hardison Declaration, dated April 4, 2008 and attached and served with TOM Shipping's Order to Show Cause ("Hardison Decl."), the Second Hardison Declaration, dated April 10, 2008 ("Second Hardison Decl."), the Third Hardison Declaration, dated April 18, 2008 ("Third Hardison Decl."), and the Rahimzadeh Declaration, dated April 4, 2008 ("Rahimzadeh Decl."), and, in the interest of brevity, will not be repeated here.

## ARGUMENT

### POINT I

**PLAINTIFF'S MOTION TO AMEND SHOULD BE DENIED, THE ATTACHMENT VACATED AND THE FUNDS RELEASED BECAUSE PLAINTIFF'S ALTER EGO CLAIMS AGAINST TOM SHIPPING ARE BASED UPON ENTIRELY CONCLUSORY, SPECULATIVE AND BASELESS ALLEGATIONS THAT ARE INSUFFICIENT FOR A RULE B ATTACHMENT**

Plaintiff's proposed Second Amended Complaint utterly fails to set forth sufficient allegations concerning TOM Shipping to justify the attachment of TOM Shipping's property. Instead, Plaintiff advances *alter ego* theories of liability that rely on conclusory, speculative and baseless allegations. In short, Plaintiff manipulates the

1

concept of *alter ego* liability, as well as the Rule B attachment procedure, in order to unjustly continue the attachment of TOM Shipping's property where TOM Shipping is a non-party with no connection whatsoever to the dispute underlying this matter.

All pleadings seeking maritime attachments are subject to heightened pleading requirements pursuant to Rule E.  See Dolco Investments, Ltd v. Moonriver Development, Ltd., 486 F. Supp. 2d 261, 272 (S.D.N.Y. 2007) (Sweet, J.).  The rule provides that a "complaint shall state the circumstances from which the claim arises with such particularity that the defendant or claimant will be able, without moving for a more definite statement, to commence an investigation of the facts and to frame a responsive pleading." Id. (quoting Rule E(2)(a)). "This heightened pleading standard is . . . a legal rule designed to counterbalance the unique and drastic remedies that are available in *in rem* admiralty proceedings." Id. (quoting P.R. Ports Auth. V. Barge KATY-B, 427 F.3d 93, 105 (1st Cir. 2005)).

The heightened pleading standard set forth in Rule E(2)(a) applies to all actions seeking maritime attachment.  However, the need for such heightened pleading requirements is dramatically magnified when the underlying claim rests upon *alter ego* allegations.  In Brave Bulk Transport Ltd. v. Spot on Shipping Ltd., 07 Civ. 4546, 2007 U.S. Dist. LEXIS 81137, (S.D.N.Y. Oct. 30, 2007) (McMahon, J.), the court held that "wholly conclusory allegations [were] simply insufficient." Id. at *16. "Were a plaintiff to be permitted to rely on such allegations to obtain an attachment against an entity that *is not a party to a contract sued on*, the already thinly stretched remedy of maritime attachment could disrupt the commercial activities of entities whose links to the real defendant in interest are tenuous [or] non-existent." Id. (emphasis added).

2

Moreover, TOM Shipping contends that the plaintiff in a Rule B attachment proceeding based upon *alter ego* claims must make an evidentiary showing that it has reasonable grounds to support its allegations. See Fesco Ocean Management Ltd. v. High Seas Shipping Ltd., 06 Civ. 1055, 2007 U.S. Dist. LEXIS 19970 (S.D.N.Y. Mar. 12, 2007) (Buchwald, J.) (applying a reasonable grounds standard to a Rule B attachment claim based upon *alter ego* allegations but indicating that the law in the Second Circuit remains uncertain regarding what standard should apply). However, setting aside, *arguendo*, the reasonable grounds standard, recent cases demonstrate that a plaintiff must make some tangible showing that its allegations are more than mere speculation. Thus purely theoretical allegations that loosely correspond to the factors applied within the Second Circuit for evaluating the sufficiency of *alter ego* pleadings[1] are not enough.

In Fesco, the court denied a motion to vacate because the plaintiff offered "proof" that an alleged *alter ego* defendant had made at least ten payments on behalf of another defendant with which the plaintiff was in privity of contract. Id. at *11. Moreover, the Fesco Court's decision was bolstered by the fact that the alleged *alter ego* defendant had submitted a supplemental declaration that "tacitly acknowledged that statements in [its earlier declaration had been] misleading, if not false." Id. at * 5, 12 (noting "the inconsistencies between [the declarations] suggest[ed] that [the affiant] endeavored to

---

[1] In the Second Circuit such factors include: "(1) disregard of corporate formalities; (2) inadequate capitalization; (3) intermingling of funds; (4) overlap in ownership, officers, directors, and personnel; (5) common office space, address and telephone numbers of corporate entities; (6) the degree of discretion shown by the allegedly dominated corporation; (7) whether the dealings between the entities are at arms length; (8) whether the corporations are treated as independent profit centers; (9) payment or guarantee of the corporation's debts by the dominating entity, [sic] and (10) intermingling of property between the entities." See Dolco Investments, Ltd., 486 F. Supp. 2d at 271-272; Fesco Ocean Management Ltd., 2007 U.S. Dist. LEXIS 19970 at *9-10.

3

hide some or all of [the relationships between the defendants] from the Court," id. at *12).

Similarly, in Tide Line, Inc. v. Eastrade Commodities, Inc., 06 Civ. 1979, 2006 U.S. Dist. LEXIS 95870 (S.D.N.Y. Aug. 15, 2006) (Wood, J.), the court vacated an attachment as against an *alter ego* defendant but stayed release of the funds for a two week period of time pending the plaintiff's filing of an amended complaint. Id. at *55-56. The court found that the plaintiff's complaint did not "state a prima facie maritime claim against [the defendant] on the basis of alter ego liability." Id. at *42. However, the plaintiff proposed amended allegations that did demonstrate the existence of such a claim because they set forth detailed factual contentions. See id. at *45-46. Those allegations were dramatically more specific than those proposed by the Plaintiff in this matter, and included, *inter alia*, allegations that: (1) Transclear, the *alter ego* defendant had made a payment to the plaintiff, on a specified date, on behalf of the other defendant, Eastrade; (2) Transclear "was caught paying" Eastrade's debts in connection with a separate maritime attachment case against Eastrade; (3) "almost all correspondence sent to [the plaintiff concerning the charter] originated from Transclear"; and (4) "Transclear appointed an arbitrator on [Eastrade's] behalf in a 2001 arbitration in which Transclear itself *was not a party*." Id. at *45-46.

In the instant matter, the allegations made in Plaintiff's proposed Second Amended Complaint are simply insufficient. The proposed allegations: (1) fail to satisfy the heightened pleading requirements of Rule E(2)(a); (2) run roughshod over the concerns expressed by the Brave Bulk Transport Court concerning excessive extension of Rule B attachments where *alter ego* liability claims are based upon tenuous or non-

4

existent (as here) links; and (3) pale in comparison to the degree of factual, testable specificity set forth in Tide Line and Fesco. In fact, the Court recognized the clear distinction between the allegations in this matter and those in Fesco when the Court stated, during the April 10, 2008 hearing, as follows:

> Fesco. There you have a situation where the related party is paying the bills. It's very *tangible*. You have cases that you have overlapping officers, overlapping shareholders. We don't have any overlapping officers, we don't have any overlapping shareholders.

(Third Hardison Decl. at ¶ 4 and Ex. 1 (Transcript of the April 10, 2008 hearing ("Transcript"), at Page12, Lines 7-11)) (emphasis added).

Instead, here the Plaintiff relies upon vague allegations void of contestable facts and liberally makes allegations based "upon information and belief." The Court itself noted this fact during the April 10, 2008 hearing when it stating that "there is a lot of supposition in this list [of alleged, attenuated connections between TOM Shipping and the named defendants] . . . But what are the really hard pieces of evidence?". (Third Hardison Decl. at ¶ 4 and Ex. 1 (Transcript at Page12, Lines 1-3)).

The answer is that there are no "hard pieces of evidence." Plaintiff's proposed Second Amended Complaint fails to make any allegations against TOM Shipping that are sufficient for a Rule B attachment. Therefore, the attachment should immediately be vacated, the funds released and the cross-motion to amend denied.

### POINT II

**PLAINTIFF'S MOTION TO AMEND SHOULD BE DENIED, THE ATTACHMENT VACATED AND THE FUNDS RELEASED BECAUSE PLAINTIFF AND TOM SHIPPING AGREED, WITH THE COURT'S APPROVAL, THAT SUCH ACTION WOULD BE REQUIRED IF TOM SHIPPING SHOWED THAT THE SOURCE OF THE FUNDS DEPOSITED INTO ITS ACCOUNT IN GERMANY WAS NOT ONE OF THE NAMED DEFENDANTS AND TOM SHIPPING HAS DONE THIS**

In part, the proposed Second Amended Complaint reads like a wild conspiracy theory. It tells a story that is not susceptible to fact checking. Thus denials and factual demonstrations, such as those made by TOM Shipping showing that it is a completely separate business entity, are always subject to a response of "but what if?". Recent events have made absolutely clear that Plaintiff intends to continually challenge reality and pose new "what if" questions.

During the April 10 hearing, Plaintiff, TOM Shipping and the Court all agreed that if TOM Shipping demonstrated that the source of the funds transferred on behalf of TOM Shipping by Europaisch-Iranische Handelsbank AG ("EIH") to HASPA was not one of the named defendants, then TOM Shipping's funds currently held at Bank of New York Mellon would be released. The following paragraphs summarize that agreement:

> Mr. Heard: "I want to know what the origin or the source of the funds is. Not that it was simply transferred from another TOM Shipping account, how did this money come into TOM Shipping's hands." (Third Hard. Decl. at ¶ 4 and Ex. 1 (Transcript at Page 22, Lines 1-4)).

> Mr. Hardison: [L]et's assume that the funds came from company ABC in Iran to the bank in Germany and then were transferred from [EIH] in Germany to Haspa Bank. Now, ABC is not one of the defendants and is in no way connected with one of the defendants." (Third Hard. Decl. at ¶ 4 and Ex. 1 (Transcript at Page 23, Lines 17-21)).

> The Court: "Then you have won." (Third Hard. Decl. at ¶ 4 and Ex. 1 (Transcript at Page 23, Line 22)).

> Mr. Hardison: "I would hope so, but what I expect to happen is [Plaintiff] is going to say, [w]ho gave the money to ABC?" (Third Hard. Decl. at ¶ 4 and Ex. 1 (Transcript at Page 23, Lines 23-25)).

> Mr. Heard: "There would have to be an end." (Third Hard. Decl. at ¶ 4 and Ex. 1 (Transcript at Page 24, Line 1)).

> Mr. Hardison: "Where is it going to be?" (Third Hard. Decl. at ¶ 4 and Ex. 1 (Transcript at Page 24, Line 4)).

6

Mr. Heard: "The source of the funds is not suspicious. If it's not one of the named defendants in this case, if it's not a Majdpour company, it's over, isn't it?" (Third Hard. Decl. at ¶ 4 and Ex. 1 (Transcript at Page 24, Lines 5-7)).

The Court: "I think it's over." (Third Hard. Decl. at ¶ 4 and Ex. 1 (Transcript at Page 24, Line 8)).
The Court: "We are all in agreement as to where the game comes to an end. (Third Hard. Decl. at ¶ 4 and Ex. 1 (Transcript at Page 24, Lines 10-11)).

Thus, in open court, the parties agreed that once TOM Shipping showed that the source of the funds transferred by EIH to HASPA was not one of the named defendants, this matter would be concluded, the attachment vacated as against TOM Shipping, and the funds released. TOM Shipping has met and exceeding this agreed upon requirement. It is absolutely clear now that the source of the funds was an advance of funds on behalf of TOM Shipping by eihbank against a L/C opened by Bank Markazi Iran at the request of Agricultural Support Services Co. ("ASSC") and made payable to TOM Shipping. (Third Hardison Decl. at ¶ 13). However, Plaintiff continues to demonstrate that it is completely unwilling to accept the reasonable and promised conclusion of this matter. Thus, following each instance in which TOM Shipping has provided additional documentation demonstrating the source of the funds, Plaintiff demands more. (Third Hardison Decl. at ¶¶ 5-9).

## POINT III

### PLAINTIFF'S MOTION TO AMEND SHOULD BE DENIED, THE ATTACHMENT VACATED AND THE FUNDS RELEASED BECAUSE PLAINTIFF'S SPECULATORY ALLEGATIONS AGAINST TOM SHIPPING ARE BASED UPON INADMISSIBLE HEARSAY

It is well settled that information provided by business "intelligence" services constitutes inadmissible hearsay and is without any evidentiary value. In Resnick v.

Resnick, 85 Civ. 9026, 1990 U.S. Dist. LEXIS 14206 (S.D.N.Y. Oct. 24, 1990) (Ward, J.), the court explained that a report such as "[t]he Dunn & Bradstreet report is inadmissible hearsay." Id. at *34. Such reports fall outside the exception for business records because the exception requires that the "record be made by 'a person with knowledge . . . in the course of a regularly conducted business activity' and that such knowledge be 'shown by the testimony of the custodian or other qualified witness.'" Id. (discussing the exception in the context of a summary judgment motion and holding that the report was inadmissible because there was "no showing that whoever compiled the [report] had personal knowledge" of the concerned business's management).

As noted by the Court during the April 10, 2008 hearing, Plaintiff's allegations and supporting arguments rest upon "a lot of hearsay." (Third Hard. Decl., Ex. 1 (Transcript at Page 9, Line 8)). In fact, the allegations set forth in Plaintiff's proposed Second Amended Complaint are heavily, nearly entirely, based upon such inadmissible hearsay. The allegations are apparently based upon the so-called Gray Page Report that was prepared for Deiulemar Shipping SpA, an entity apparently related to Deiulemar Compagnia di Navigazione SpA which is the plaintiff in a separate Rule B proceeding, 07 Civ. 4655, currently pending in this district against the same named defendants. However, as in Resnick, the author of the Gray Page Report has no personal knowledge of TOM Shipping nor, presumably, personal knowledge of any of the named defendants in this matter. Thus information drawn from that report is inadmissible. (See Second Hardison Decl. at ¶ 3).

Therefore, the insufficiency of Plaintiff's allegations against TOM Shipping, as discussed above, is magnified when the hearsay nature of the information set forth in

8

Plaintiff's supporting declarations is considered. Hence, the Court should deny Plaintiff's motion to amend, vacate the attachment and order the immediate release of TOM Shipping's funds.

## CONCLUSION

Wherefore, for all the foregoing reasons, the Court should grant TOM Shipping's motion by order to show cause for an order that its funds be immediately released from Plaintiff's Rule B attachment and that the attachment be vacated as against TOM Shipping and the Court should further deny Plaintiff's cross-motion seeking leave to file a Second Amended Verified Complaint

Dated: New York, New York
April 18, 2008

                        EATON & VAN WINKLE LLP

                    By:   /s/ Michael O. Hardison
                          Michael O. Hardison

                          3 Park Avenue
                          New York, New York 10016-2078
                          (212) 779-9910

                          Attorneys for Non-Party
                          TOM Shipping Vermittlung GmbH