Michael O. Hardison
EATON & VAN WINKLE LLP
3 Park Avenue
New York, New York 10016-2078
(212) 779-9910

Attorneys for Non-Party TOM Shipping
Vermittlung GmbH

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------------------------------x

HAWKNET, LTD.,

                                    Plaintiff,

        -against-

                                                        07 Civ. 5912 (NRB)
                                                        ECF CASE
OVERSEAS SHIPPING AGENCIES,
OVERSEAS WORLDWIDE HOLDING GROUP,
HOMMAY GENERAL TRADING CO., LLC,
MAJDPOUR BROS. CUSTOMS CLEARANCE,
MAJDPOUR BROS. INTERNATIONAL SEA &
LAND TRANSPORT S.A.,
GULF OVERSEAS LLC,
GULF OVERSEAS GENERAL TRADING, LLC, and
MOS OVERSEAS SHIPPING VERMITTLUNG GMBH,

                                    Defendants.

----------------------------------------------------------------------x

## THIRD HARDISON DECLARATION

        MICHAEL O. HARDISON, Esq., pursuant to the provisions of 28 U.S.C. § 1746,

declares and states as follows:

        1.    I am a member of the Bar of the State of New York, I am admitted to practice

before this Honorable Court, and I am a partner in the firm of Eaton & Van Winkle LLP,

attorneys for Non-Party TOM Shipping Vermittlung GmbH ("TOM Shipping").

2.    I make this Declaration in further support of an application to vacate an attachment of certain assets of TOM Shipping in the amount of $2,406,195.00 being restrained at The Bank of New York.

3.    I refer to the hearing held before the Court on April 10, 2008, in connection with the above referenced application by TOM Shipping (a copy of the Transcript of the hearing ["Transcript"] is attached as Exhibit 1).

4.    After certain statements by counsel for Hawknet, which purportedly listed the links between TOM Shipping and the Defendants, a colloquy occurred at the hearing among the Court and counsel as follows:

THE COURT: You're sort of repeating everything, but there is a lot of supposition in this list. ... But what are the really hard pieces of evidence?
For example, you have read my earlier decision, which, unfortunately, I left upstairs.
MR. HEARD: Fesco?
THE COURT: Fesco. There you have a situation where the related party is paying the bills. It's very tangible. You have cases that you have overlapping officers, overlapping shareholders. We don't have any overlapping officers, we don't have any overlapping shareholders ... But the question is, What is the really hard stuff? Because they have documents, it seems to me, which at least have other names on them that seem to show an independent transaction.
    ***
MR. HEARD: ... One thing I think is very important ... is what is the source of the money that was being transferred?
THE COURT: Right. I think that's a very important question.

*Transcript at Page 11 - Line 25, Page 12 - Lines 1-11, 15 - 18 and 20 - 25, Page 13 - Line 1.*

Mr. HEARD: ... In the reply papers, what we are told is Mr. Rahimzadeh transferred money from one TOM Shipping account into another TOM Shipping account. ... But the question that begs is: How did the money land in the first TOM Shipping's account.
    ***

Did it come from MOS Overseas?  Did it come from Overseas Shipping Agencies?
***

THE COURT: Wouldn't producing the ultimate source of the funds bring this whole thing to an end if you're right?

*Transcript at Page 15 - Lines3-7, 13-14, and 24-25 and Page 16 - Line 1.*

THE COURT: It seems to me the Court's decision shouldn't turn on things such as is TOM Shipping operated out of someone's home?  It's just not that staggering either way. But the way to truly bring this to an end is to learn what the source of the funds are and just to see if it traces back to any of the defendants.  If it doesn't, it doesn't.  In other words, I am not going to say that because two companies use the same broker, therefore they must be related.

*Transcript at Page 22 - Lines 7-14.*

**MR. HARDISON: Two things here. I understand that the bank that transferred the money to the HASPA Bank deals with the Iranians and that people use that bank because things happen faster using that bank if you're dealing with Iran than if you're dealing with just a regular German bank.**

**So let's assume that the funds came from company ABC in Iran to the bank in Germany and then were transferred from the Iranian bank in Germany to the HASPA bank.**

**Now, ABC is not one of the defendants and and is in no way connected with one of the defendants.**

**THE COURT: Then you have won.**

**MR. HARDISON: Not necessarily.  I would hope so, but what I expect to happen is he is going to say, Who gave the money to ABC?  How do we know it didn't come from MOS?**

**MR. HEARD: There would have to be an end to our legitimate inquiries, Your Honor, but I don't think we are there yet.**

**MR. HARDISON: Where is it going to be?**

**MR. HEARD: The source of the funds is not suspicious.  If it's not one of the named defendants in this case, if it's not a Majdpour company, it's over, isn't it?**

**THE COURT: I think it's over.**

**MR. HARDISON: That's fine with me.**

**THE COURT: We are all in agreement as to where the game comes to an end.**

*Page 23 - Lines 12-25 and Page 24 - Lines 1-11 (Emphasis supplied).*

In short, at the end of the hearing, all agreed that if the source of the funds was not one of the named defendants then the case as against Non-Party TOM Shipping was over.

5.    On April 11, 2008, the day after the hearing, I sent counsel for Hawknet a letter where I advised that, based upon a statement received from eihbank (which I attached to my letter), the source of the funds transferred from TOM Shipping's account at eihbank to TOM Shipping's account at HASPA on March 17, 2008, was document proceeds under a Letter of Credit opened in favor of TOM Shipping by the Central Bank of Iran (Bank Markazi Iran) issued at the request of Agricultural Support Services Co. (ASSC) to cover freight charges for the cargo carried aboard the M/V JOUDI (a copy of my letter dated April 11, 2008 is attached as Exhibit 2).

6.    Counsel for Hawknet was not satisfied with this explanation and demanded copies of the account statements for TOM Shipping's account at eihbank for the period January - March 2008.

7.    On April 14, 2008, which was the following Monday, in a final effort to resolve this matter without requiring a ruling by the Court, I obtained the statements and forwarded them to counsel for Hawknet (a copy of my letter dated April 14, 2008 is attached as Exhibit 3).

8.    Counsel for Hawknet was still not satisfied and demanded the documents reflecting the communications exchanged during the negotiation of the fixture of the M/V JOUDI (which of course has nothing to do with the source of the funds at issue).

9.    The continuing demands for documents, which is a flagrant breach of the agreement reach by the Court and counsel at the conclusion of the hearing held on April 10, 2008, continues to this day (see counsel for Hawknet's letter to the Court dated April 17, 2008 requesting the Court to "order" the production of additional documents by TOM Shipping).

10.    Further, in his letter to the Court dated April 17, 2008, counsel for Hawknet argues that the funds transferred from eihbank to HASPA on March 17, 2008 could not have come from the account of TOM Shipping at eihbank.  Counsel for Hawknet bases this argument on his interpretation of TOM Shipping's March eihbank account statement (Exhibit 3 to this declaration) which he asserts shows a deposit into the account of Euros 1,600,000 on March 17, 2008, but no withdrawal of that amount on the same day.  Consequently, according to counsel for Hawknet, since the funds at issue could not have come from the account of TOM Shipping at eihbank, TOM Shipping has not established the source of the funds at issue.

11.    Counsel for Hawknet miscontrues the entries on the eihbank March account statement for TOM Shipping.

12.    The entries on the eihbank March account statement are mostly "negative" entries as indicated by the "-" following the entries. The account for the month of March 2008 started with a negative balance of Euros 5.00 (see letter received from eihbank dated April 18, 2008)(a copy of eihbank's letter dated April 18, 2008 is attached as Exhibit 4). On

March 17, 2008, eihbank transferred the sum of Euros 1,600,000.00 to the account of TOM Shipping at Haspa (Id. and Second Hardison Declaration - Exhibit 4). This transfer resulted in a negative balance in the account of Euros 1,600,005.00 (Exhibit 4). On March 28, 2008, the debit entry of Euros 1,600,00.00 was balanced when proceeds in the amount of Euros 1,997,601.10 under Letter of Credit ("L/C") No. FE 86001769 from Bank Markazi Iran (issued at the request of ASSC) were credited after negotiation of the L/C to the account of TOM Shipping (Id. and Second Hardison Declaration - Exhibit 1).

13.    The source of the Euros 1,600,000.00 transferred by eihbank to the account of TOM Shipping at HASPA on March 17, 2008 has been clearly identified. The source of the funds was not any of the named defendants. It was simply an advance of funds by eihbank on behalf of TOM Shipping against a L/C opened by Bank Markazi Iran at the request of ASSC and made payable to TOM Shipping.

14.    The funds of TOM Shipping under attachment at the Bank of New York total $2,406,195.00.

15.    Hawknet's claim totals $2,369,036.79 (Hardison Declaration - Exhibit 1)(the Hardison Declaration is attached to the Order To Show Cause obtained by TOM Shipping). Hawknet, prior to the attachment of the funds of TOM Shipping, attached other funds in the amount of $3,780.00 at HSBC Bank and $22,394.12 at BONY Mellon. Therefore, Hawknet's attachment as against the funds of TOM Shipping can be no more than $2,342,862.67 ($2,369,036.79 - $3,780.00 - $22,394.12 = $2,342,862.67).

-6-

16.    Another plaintiff (Deiulemar) in a separate action (07 Civ. 4655 (DAB)) has a claim of $607,887.52 and also has attached the funds of TOM Shipping at the Bank of New York.

17.    This Court should direct the Bank of New York to release funds of TOM Shipping in the amount of $1,798,307.48 ($2,406,195 - $607,887.52 [Deiulemar's attachment] = $1,798,307.48).

18.    The source of the funds at issue has been clearly identified. The source was not any of the named defendants. The source was eihbank advancing funds on behalf of TOM Shipping against a L/C opened by Bank Markazi Iran at the request of ASSC and made payable to TOM Shipping. Therefore, the Court on the papers before the Court without a further hearing should grant TOM Shipping's application for an order directing the release of funds being restrained at the Bank of New York and deny Hawknet's cross-motion for leave to amend its amended complaint.

Dated: New York, New York
        April 18, 2008


        I declare under penalty of perjury that the foregoing is true and correct.


                                    /s/ Michael O. Hardison
                                    Michael O. Hardison


-7-