# Exhibit 1

1

84A8HAWC
1  UNITED STATES DISTRICT COURT
1  SOUTHERN DISTRICT OF NEW YORK
2  ------------------------------x
2
3  HAWKNET, LTD.,
3
4                    Plaintiff,
4
5            v.                          07 Cv. 5912 (NRB)
5
6  OVERSEAS SHIPPING AGENCIES,
6  et al.,
7
7                    Defendants.
8
8  ------------------------------x
9
9                                       April 10, 2008
10                                       5:00 p.m.
10
11  Before:
11
12                  HON. NAOMI REICE BUCHWALD
12
13                                       District Judge
13
14                        APPEARANCES
14
15  BURKE & PARSONS
15       Attorneys for Plaintiff
16  KEITH W. HEARD
16
17  EATON & VAN WINKLE LLP
17       Attorneys for TOM Shipping Vermittlung
18  MICHAEL O. HARDISON
18
19
19
20
20
21
21
22
22
23
23
24
25

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

2

84A8HAWC
```
 1                (Case called)
 2                THE COURT:  Can we get the appearances for Hawknet,
 3      please?
 4                MR. HEARD:  For plaintiff Hawknet is Keith Heard of
 5      the law firm of Burke & Parsons.
 6                THE COURT:  And for the nonparty TOM Shipping.
 7                MR. HARDISON:  Michael Hardison with the firm of Eaton
 8      & Van Winkle LLP.
 9                THE COURT:  I think that, given the amount of paper
10      and sort of charges and questions, the best way to proceed is
11      to ask Mr. Heard to go item by item as to what evidence you
12      rely upon to assert that TOM Shipping is a successor or related
13      entity to the group of defendants Overseas.
14                MR. HEARD:  Thank you, your Honor.
15                If I may, I would like to tell the whole story because
16      I think that the TOM piece of it is more understandable when
17      it's plugged in.  I am not going to belabor this.
18                THE COURT:  I just want to tell you that I have read
19      all the papers one time.  I have read the amended complaint,
20      not the second amended complaint.  So I start with the
21      understanding that it's your position that the defendant
22      entities as a group are one, effectively.
23                MR. HEARD:  Correct.
24                THE COURT:  So I will just let you know that.
25                MR. HEARD:  I apologize.  I can go right from there to
```
                 SOUTHERN DISTRICT REPORTERS, P.C.
                        (212) 805-0300

3

84A8HAWC

1  TOM Shipping.
2          Hawknet instituted the attachment action last year,
3  and we had success on that in early September.  September 12 we
4  were called by HSBC Bank that there was a small effected
5  attachment at the bank, about $3800, and the money was being
6  wired through for the account of Mos Overseas.
7          Shortly after that time, TOM Shipping Vermittlung was
8  formed in Hamburg.
9          In early January, January the 7th, we achieved our
10 second attachment of funds belonging to Mos Overseas at the
11 Bank of New York Mellon in the amount of slightly more than
12 $22,000.
13         For both of these attachments, I faxed notice to Mos
14 Overseas, as required by this court's local rule.
15         In that same month of January, after our second
16 attachment of funds, clearly belonging to Mos Overseas,
17 Mr. Rahimzadeh, according to his declaration, went to the
18 Hamburger Sparkasse bank and opened a bank account.
19         For starters, we find it curious that a company would
20 be set up and nothing would be done to establish a bank account
21 for four months.
22         Mr. Rahimzadeh is 76 years old.  In his declaration,
23 he declares that he was the chartering manager of Mos Overseas
24 until he set up the bank account that I just described in
25 January.  Presumably, as a chartering manager at Overseas, he

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

4

84A8HAWC
```
 1   was aware of those two attachments that were effected.
 2              MR. HARDISON:  If I may interrupt briefly, Mr.
 3   Rahimzadeh did not make any such statement in his declaration.
 4   He said he is the general manager of TOM Shipping.
 5              MR. HEARD:  Pardon me.  Let me check that.  If I am
 6   wrong, I will retract what I said.
 7              THE COURT:  I have it open.  He says, I am the
 8   managing director and a shareholder of TOM Shipping.  He says
 9   in the next paragraph, I previously worked for a company called
10   Mos Overseas Shipping.
11              MR. HEARD:  That's what I was referring to, your
12   Honor.  I thought he said he was the chartering manager.  If I
13   am wrong about that, I apologize.  There was an earlier
14   declaration that we were given.  Perhaps it was stated there.
15              In any event, he does confirm that he was an employee
16   of Mos Overseas.  The capacity really doesn't matter that much.
17   He worked for Mos Overseas.
18              He is a shareholder in TOM Shipping.  There are two
19   others.  A woman named Amelashi, that's her last name, she is
20   22 years old, and a woman whose last name is Montanag, she is
21   49 years old.
22              In the articles of incorporation for the company,
23   which is Mr. Hardison has put forth before the Court, these two
24   ladies state their address as Harvestehuder --
25              THE COURT:  I think your pronunciation is impressive
```
SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

5

84A8HAWC

1    up to now.  I am not even going to try.
2              MR. HEARD:  I studied German when I was in high
3    school.  Harvestehuder Weg 79.  That's the address they gave.
4              We sent an investigator to that address.
5    Mr. Bimschas, whose declaration is before the Court, had one of
6    his colleagues go to that address.
7              It's a residential building.  That's fine.  They
8    didn't have to put down a commercial listing.  But you might
9    expect to see their name on the nameplate.  There are five
10   nameplates at that address.  Mr. Bimschas's colleague took a
11   photograph of the nameplate, and that's before the Court as
12   Exhibits J and K to his declaration.  The name Amelashi does
13   not appear there.  The name Montanag does not appear there.
14   But the name Majdpour does appear there, your Honor.  And the
15   name Majdpour appears throughout our amended complaint and our
16   proposed second amended complaint.  With the exception of Homay
17   General Trading, every defendant in this case has Majdpours as
18   their shareholders and their directors.
19             Additionally, Gulf Overseas General Trading also has a
20   man named Montanag, same last name as the woman who is a
21   shareholder in TOM Shipping, as one of its shareholders.  That
22   information appears in the Great Page report, which is Exhibit
23   B to my declaration.
24             So although TOM purports to be an independent company,
25   we have one clear connection right there with the Majdpours,

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

6

84A8HAWC

```
 1    two of the three shareholders live at the address where the
 2    Majdpours are.
 3              According to Mr. Rahimzadeh, the company's address is
 4    Forster Weg 22 in Hamburg.
 5              Mr. Bimschas himself went to that location and he took
 6    a photograph.  The photograph is Exhibit D to his declaration.
 7    It's just a residential apartment building.  It's not a
 8    commercial address.  It's not a business address.  There is a
 9    nameplate there for Rahimzadeh, that's Exhibit G.  It's a poor
10    photograph.  We apologize for that, but I believe you can make
11    out the Rahimzadeh name, your Honor, to Mr. Bimschas's
12    affidavit.  That shows him there, but don't necessarily show
13    the company there.
14              When the bank account was formed for TOM Shipping at
15    Hamburger Sparkasse Bank in January, the address the bank put
16    on the account was TOM Shipping, care of Mos Overseas Shipping
17    Vermittlung, Neuer Wall 8, Hamburg.
18              Now, in his declaration, Mr. Rahimzadeh says, Well,
19    that's wrong.  The only possible explanation for that could be,
20    when I went to the bank to open the account, I was asked for a
21    business card, and all I had was my Mos Overseas business card,
22    so that's what I gave to the bank, and they must have taken the
23    name and the address from that business card.
24              It's possible he did that, but it seems odd if he has
25    got his own company, which has been up and running for four
```

84A8HAWC
1    months, that he doesn't have his own business cards now.  We
2    don't even know that he has his own business cards today.  We
3    haven't seen any.  They haven't been put in as an exhibit in
4    this case.
5            I submit that there is another explanation as to why
6    the bank's records for this account showed the address as TOM
7    Shipping, care of Mos Overseas.  I think that's the address
8    that Mr. Rahimzadeh gave to the bank either verbally or by
9    filling out a form that we haven't seen.
10            Corroboration of the address that TOM Shipping is
11   located care of Mos Overseas can be found on the Internet.  I
12   have attached to my declaration, your Honor, Exhibit F -- I am
13   sorry, Exhibit G is a screen print of a German language Web
14   site.  It identifies TOM Shipping Vermittlung GmbH, the same
15   company.  The address given is the Neuer Wall 8 address for Mos
16   Overseas.  If you flip back to the prior exhibit, your Honor,
17   Exhibit F to my declaration, you will see a screen print from
18   the same Web site for Mos Overseas showing the same address.
19            I should have had this translated for the Court, and I
20   apologize for not doing that.  I didn't think to put this into
21   my papers until yesterday.  I called a friend of mine who
22   speaks German.  Firmen wissen, basically means company, Firmen
23   is company, knowledge.  So, as I put in my declaration, this is
24   a German guide to business Web site.
25            That is the only information I could find on the

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

8

84A8HAWC

1   Internet at all about TOM Shipping.  And the address it shows
2   is the Mos Overseas address, which is the same address that the
3   Hamburger Sparkasse Bank had on its account.
4          Another interesting fact is that TOM Shipping does not
5   have a telephone listing in Hamburg.  Mr. Bimschas who works in
6   Hamburg checked that for us and has submitted the computer
7   screen print from directory assistance in Hamburg as Exhibit F
8   to his declaration, your Honor.  If we look at the second page
9   of Exhibit F, there is information on Mos Overseas.  Their
10  address is shown, their telephone number, even a fax number.
11  But when Mr. Bimschas put in the name TOM Shipping Vermittlung,
12  the Web site said no entry found for your input.
13         What kind of international shipping company doesn't
14  have a telephone number?  That seems very odd.  Unless they are
15  operating out of somebody else's office and that office has the
16  telephone number.
17         There are some other links, your Honor, and they
18  relate to ships.  One ship is the JOUDI.  The money that was
19  attached at the Bank of New York Mellon, which is the subject
20  of this hearing, was a freight payment that was being made on
21  that ship.  The ship is managed by Blue Fleet Marine.  It was
22  time chartered to a company in Singapore named Brooklands
23  Planning, and according to TOM Shipping's documents, it was
24  voyage chartered by Brooklands down to TOM Shipping.  That's
25  what they contend.

9

84A8HAWC

1              William Cook is the chartering manager of Hawknet.
2    Mr. Cook made some inquiries with his market sources to see
3    what he could learn about the transaction involving the JOUDI.
4    He talked to a gentleman at Blue Fleet, which is the vessel
5    manager, and asked him what he understood about the identity of
6    the subcharterer, the company that was under Brooklands, and he
7    indicated that it was something like Overseas.
8              THE COURT:  That's a lot of hearsay.
9              MR. HEARD:  It is, your Honor.
10             MR. HARDISON:  Speculation as well.
11             MR. HEARD:  We don't know that it's speculation if
12   that's what the man knew.  It's not a trial.  Our standard is
13   just a prima facie standard.  I am not submitting that as the
14   overriding piece of evidence, but it's consistent with
15   everything else I am going to offer to the Court today.
16             I would point out that the Great Page investigative
17   report states that Overseas Shipping Agencies is the lead
18   company in the Majdpour group.  It was also the agent for this
19   ship at the discharge port.  There is no speculation about
20   that.  That is shown right in the fixture recap that TOM
21   Shipping has submitted to the Court.
22             A fixture recap, after negotiations for a vessel
23   charter are completed, a recap is prepared that summarizes the
24   essential terms of what was agreed and it's sent out to both
25   parties.  And until a longer printed form of a charter party is

84A8HAWC

1  prepared, the fixture recap is the agreement between the
2  parties.  That's what they would look to until a more complete
3  document was prepared.
4         The fixture recap has been submitted as Exhibit 2 to
5  Mr. Rahimzadeh's declaration.  It names the ship on the first
6  page.  It names TOM Shipping.
7         On the second page, your Honor, this is Exhibit 2 to
8  Rahimzadeh's declaration, about eight lines from the top, it
9  says owner's agents, that means the ship owner's agent at the
10  load port.  But the charterer's agent is at the discharge port.
11  The charterer is identified in this document as TOM Shipping,
12  and they appointed Overseas Shipping Agencies as the discharge
13  port agent for that vessel.
14         Overseas is located in Iran.  Many of the defendants
15  in the amended complaint and the proposed second amended
16  complaint are Iranian companies.  This ship carried a cargo of
17  phosphate from a port in Lebanon to Bandar Abbas, Iran.  The
18  information Great Page developed was that Overseas was actually
19  involved with the cargo as a buyer of the cargo.  In the reply
20  papers that have been submitted today, TOM Shipping disputes
21  that.  They cast that as a transaction between TOM Shipping and
22  an unrelated entity in Iran.  However, if, as we contend, and
23  as we believe the evidence shows, TOM Shipping is nothing more
24  than an alter ego for Overseas, then the information that Great
25  Page has developed is not inconsistent.

84A8HAWC

11

```
 1              There is still another link between the JOUDI and the
 2     Majdpour companies.  Getting back to the same Exhibit 2 to Mr.
 3     Rahimzadeh's declaration, your Honor, this is the fourth page
 4     down, the fixture recap is normally prepared by a charter party
 5     broker.  The broker in this transaction was George Lemos.  His
 6     name appears right there toward the end before the telephone
 7     numbers.  The brokerage company where he is employed, and it
 8     may be his own company, I don't know, is Sea Challenger
 9     Maritime, Ltd.
10              The evidence indicates that Sea Challenger and
11     Mr. Lemos have been intimately involved with the Majdpours.
12     Mr. Lemos previously worked for a company called V Ships.
13     That's in the Great Page report.  When he was at V Ships, he
14     acted as a charter party broker for the Majdpours.  He did
15     business with Mos Overseas.  Great Page spoke to Mr. Lemos and
16     he confirmed that.  He says, unfortunately, he is not doing
17     business with Mos Overseas now because of the Iranian
18     situation, I think is how he described it.
19              I would submit to the Court that Mos Overseas is
20     probably lying low and is not in the market because of this
21     attachment that we have.  They can't send funds in U.S. dollars
22     because of the attachment.
23              Taking it a step further, Great Page asked Mr. Lemos,
24     What about TOM Shipping?
25              THE COURT:  You're sort of repeating everything, but
```

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

84A8HAWC

12

1    there is a lot of supposition in this list.  And maybe in the
2    end, if you get 20 suppositions, that's good enough.  But what
3    are the really hard pieces of evidence?
4             For example, you have read my earlier decision, which,
5    unfortunately, I left upstairs.
6             MR. HEARD:  Fesco?
7             THE COURT:  Fesco.  There you have a situation where
8    the related party is paying the bills.  It's very tangible.
9    You have cases that you have overlapping officers, overlapping
10   shareholders.  We don't have any overlapping officers, we don't
11   have any overlapping shareholders, at least not on paper.
12            I understand that you have a nameplate.  I am not
13   saying it's irrelevant.  You have argued that there is no phone
14   for TOM Shipping.  It's a piece.  I am not saying it's not a
15   piece.  But the question is, What is the really hard stuff?
16   Because they have documents, it seems to me, which at least
17   have other names on them that seem to show an independent
18   transaction.
19            Why don't you just continue?
20            MR. HEARD:  I am informed by your questions.
21            One thing I think is very important, and TOM Shipping
22   have ostensibly answered this question, but I don't think they
23   have really answered it, is what is the source of the money
24   that was being transferred?
25            THE COURT:  Right.  I think that's a very important
                    SOUTHERN DISTRICT REPORTERS, P.C.
                          (212) 805-0300

13

84A8HAWC
1    question.
2            MR. HEARD:  I didn't ask for it until Monday because I
3    didn't find out about the particular transaction until Monday.
4    Mr. Bimschas went to the Hamburger Sparkasse bank.  Mr.
5    Rahimzadeh was there with his lawyer, and he was shown the
6    account information and he got a screen print of it, and that's
7    before the Court.  What that shows is 1.6 million euros came
8    into an account that had had no prior activity on Monday -- I
9    think it was Monday -- March 17, and then went out, pursuant to
10   his instructions, the very next day as U.S. dollars.
11           It came in as euros, which would not have been
12   attached in New York, if any of these defendants' names had
13   been on them, because euros don't pass through New York,
14   dollars pass through New York.  It went into his account as
15   euros.  He told the bank to send dollars to Singapore.  If
16   dollars are going to Singapore under the TOM Shipping name,
17   then it sails under the attachment in this case because none of
18   these defendants have their names on it.  But the bank put the
19   address on it that they had for the account, which was care of
20   Mos Shipping.
21           Mr. Rahimzadeh doesn't know for a fact that the bank
22   put that address on the account from the business card that he
23   says he gave them in January.  What he says is the only
24   possible explanation could be.  Well, that's very convenient
25   for him, but I haven't seen an affidavit from anybody in the
                   SOUTHERN DISTRICT REPORTERS, P.C.
                          (212) 805-0300

84A8HAWC

14

1  bank saying, He gave us a business card that said Mos Shipping,
2  Neuer Wall 8, and said that's his address and that's the
3  address we put on the account.  He could have said at that time
4  put down Forster Weg.  Instead, he gave them a Mos Overseas
5  address.
6        We think that's a possible indication at that time, if
7  not even now, he was still working out of the Mos Overseas
8  office.  It just seems strange that you go in for one company
9  to set up a bank account, and when you are asked for that
10  company's address, you give a business card for another
11  company.  It stands to reason, no matter what the language
12  difficulties might have been, you might think, if I do this,
13  the bank is likely to put down the address that appears on the
14  business card.
15        The bank does not put in any declaration saying that
16  that was a mistake they made, so we don't know what happened in
17  January and why the Mos Shipping name and address appear on
18  that bank account.  But because they did appear on that bank
19  account, when the Hamburger Sparkasse bank wired the money out,
20  it wired it out for the benefit of TOM Shipping, care of Mos
21  Overseas, at the Mos Overseas address.
22        On the source of the funds, your Honor, Mr. Bimschas
23  saw the screen print.  He sees the transfer coming in and he
24  sends it to me.  I got it translated.  On Monday afternoon,
25  after I got the screen print that day, I sent an e-mail to Mr.

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

15

84A8HAWC

1    Hardison and basically saying, I want to know the source or
2    origin of the funds that wound up in that account on March 17.
3            In the reply papers, what we are told is Mr.
4    Rahimzadeh transferred money from one TOM Shipping account into
5    another TOM Shipping account.  I think that's what the reply
6    papers say.  But the question that begs is:  How did the money
7    land in the first TOM Shipping's account?  Why does he have two
8    accounts?  It's a three-person company, arguably a two-person
9    company, there are only two directors, run out of a house.  Why
10   does he need two bank accounts?  But he has got two.
11           And the money was transferred from one to the other,
12   but that doesn't tell us who put the money in that bank
13   account.  Did it come from Mos Overseas?  Did it come from
14   Overseas Shipping Agencies?  I believe that those are truly
15   legitimate questions, because if they set up this company to
16   get around this attachment, they can get around the attachment
17   by sending euros to another company that they have set up, and
18   then that company can transmit dollars.  The dollars go through
19   New York, but if the transfer doesn't have the defendants' name
20   on it, the defendants have defeated the attachment, and I think
21   that's what was being attempted here.  But it got frustrated
22   because of the presence of the Mos Shipping name on the bank's
23   address information for the account.
24           THE COURT:  Wouldn't producing the ultimate source of
25   the funds just bring this whole thing to an end if you're

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

84A8HAWC

```
 1    right?
 2              MR. HARDISON:  Your Honor, we have put documentation
 3    in, my second declaration, that shows where the money came
 4    from.  It's another account for TOM Shipping.  Hawknet has no
 5    evidence whatsoever that any money was being transferred
 6    between any of the defendants and TOM Shipping, or that TOM
 7    Shipping was transferring money to any of the defendants or on
 8    behalf of any of the defendants.
 9              Now, he says, I can't believe the general manager for
10    TOM Shipping's story that this all resulted from
11    miscommunication about a business card.  The bank has confirmed
12    that.  If you look at Exhibit 7 to the Rahimzadeh declaration,
13    there's two things there, your Honor.  Number one, it says that
14    they confirm that the correct address for TOM Shipping is the
15    address that we say is the correct address.  They also say, On
16    the occasion of the opening of the above-mentioned account,
17    you, Mr. Rahimzadeh, were asked for the address of TOM
18    Shipping.
19              THE COURT:  Can you just give me a moment?
20              MR. HARDISON:  This is Exhibit 7 to the Rahimzadeh.
21              THE COURT:  To the moving papers?
22              MR. HARDISON:  Yes.  It's the declaration that has
23    both captions on the first page.
24              THE COURT:  So this document from the Hamburg bank
25    says that the original account contract had no address, is that
```

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

84A8HAWC
1    correct?
2                MR. HARDISON:  That's correct.  That directly rebuts,
3    of course, the earlier speculation that there was some other
4    document that was signed at the time of the opening of the
5    account that had the Mos address on it.  The bank says right in
6    their own letter that there was no address on any of those
7    documents.  The documents are attached to the letter.
8                THE COURT:  Then the correct address is added on April
9    6.
10               MR. HARDISON:  March 26, next to the last paragraph on
11   the first page.
12               THE COURT:  I am sorry.
13               So that's after the problem arises?
14               MR. HARDISON:  Yes.  If you had looked at the other
15   exhibits, your Honor, looking at exhibit, I think it's 3 to
16   this same declaration, the request to make the wire transfer
17   was made on March 17.  That's Exhibit 3.  The wire transfer
18   itself, which is Exhibit 4, took place on March 18, the next
19   day.  The bank says that when the account was opened, it used
20   the business card address, that says, Following this, we copied
21   care of Mos Overseas into our database.
22               So from January when the account was opened they have
23   the incorrect address in there.  That incorrect address
24   remained in there until March 26.  So on March 17, which was
25   before March 26, and on March 18, when the wire transfer took

84A8HAWC

1    place, the only address the bank had for TOM Shipping was care
2    of Mos, and that's how come it wound up on the wiring
3    instructions.  Despite the fact that if you look at the payment
4    instructions, which is Exhibit 3, that Mr. Rahimzadeh gave the
5    bank, he uses the correct address, which apparently is his
6    residence.
7            I am told by people that are knowledgeable with wire
8    transfers that what happens when a wire transfer takes place is
9    all the bank has to do with the computer systems we have today
10   is they type in the account number.  Everything else is
11   automatic.  So if in the system there is an incorrect address
12   and the bank doesn't even write it out itself, everything is
13   being done by computers, then you're not going to catch a
14   mistake like that.
15           It strikes me as odd that we go from an incorrect
16   address on a wire transfer to saying that TOM Shipping is in
17   cahoots with the defendants.  That seems kind of a stretch.
18           MR. HEARD:  May I speak to this point?
19           THE COURT:  Sure.  Absolutely.
20           MR. HEARD:  I read letters the same way I read
21   statutes of contracts, very carefully.  It causes problems with
22   my wife sometimes, but she is not here.
23           This is speculation by the bank.  They are saying,
24   Maybe you misunderstood the question -- in other words, asking
25   for his company address -- maybe you misunderstood the question

19

84A8HAWC

1    for the address due to linguistic difficulties.  He lives in
2    Hamburg, he works in Hamburg, he worked for Mos before he set
3    up TOM Shipping, and somebody asked him for his address and he
4    doesn't know what that means?  That seems far-fetched, but
5    let's take it a step further.
6         He is in a German bank.  Presumably, the person in the
7    bank who asked him for this information would understand
8    whether he got it wrong or not.  Because if the guy at the
9    bank, the bank officer says, We need an address for TOM
10   Shipping, and if Mr. Rahimzadeh gives him a business card for
11   another company, it's not a linguistic problem, because
12   presumably the German bank officer will look at that and say,
13   No, no, not for some other company, I need an address for TOM
14   Shipping, and presumably would hand it back to Mr. Rahimzadeh.
15   But that didn't happen here.
16        MR. HARDISON:  I don't think counsel was present when
17   this took place so he is not in a position to say that's not
18   what happened here.
19        MR. HEARD:  Well, this is maybe.  This is maybe.  I am
20   not arguing with Mr. Hardison.  I am trying to understand the
21   evidence that they are placing before the Court.  This person
22   who wrote this letter at the Hamburger Sparkasse bank, he
23   doesn't say in here that he was present when Mr. Rahimzadeh was
24   there and opened the bank account.  We know what happened here.
25   Mr. Rahimzadeh's story is about the business card.  He goes and

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

20

84A8HAWC

1   explains that to the bank and the bank writes him a letter and
2   says, That must be it, you gave us a Mos Shipping business card
3   and we used that to put the Mos Shipping address on this
4   account you opened for TOM Shipping, which is supposed to be a
5   completely different company.
6           Now, this sentence can be read in a slightly different
7   way than Mr. Hardison read it. Maybe you misunderstood the
8   question for the address due to linguistic purposes, and maybe
9   you handed over your business card from your former employer,
10  Mos Overseas Shipping Vermittlung.
11          Then it says, Following this. When? Just at some
12  point afterwards. It doesn't say, Because of this, we copied
13  care of Mos Overseas into our database.
14          With respect to the database, your Honor, I would like
15  to point out something. Mr. Bimschas obtained a screen print
16  of the bank's database on Monday and sent it to us. We had it
17  translated. That is Exhibit A to Mr. Bimschas's declaration.
18  Since this attachment took place, there have been 14 -- I
19  counted them as I was sitting here waiting for the hearing to
20  begin -- there have been 14 amendments by the bank in
21  information for this account. I don't know what is going on
22  here, but there seems to be a lot going on at this bank with
23  respect to this particular account, and we don't know what the
24  explanation is for 14 changes to the bank's database
25  information for this one company.

                 SOUTHERN DISTRICT REPORTERS, P.C.
                         (212) 805-0300

21

84A8HAWC

```
 1          I do submit, your Honor, that as you stated, it's not
 2  inappropriate to find out where this money came from.  If I
 3  were in Mr. Hardison's shoes, I would have said we will get
 4  that information.  I put in my papers in opposition yesterday.
 5  The reply papers took one day and they contain the information
 6  that's offered about the money being transferred in from
 7  another TOM Shipping account.  If we could wait one day, maybe
 8  we can find out what the ultimate source of that money was.  I
 9  don't think that's an inappropriate request by the plaintiff.
10          MR. HARDISON:  The problem from TOM Shipping's
11  standpoint, your Honor, is they have asked for documentation.
12  We have given them the documentation.  Then they say we need
13  something else so we give them something else.  Then we need
14  more.  Our client wants the funds released.  They are just
15  dragging this on and on and on the basis of no evidence.
16          MR. HEARD:  If I may respond to that, your Honor.
17          I asked for the information about the source and
18  origin of the funds on Monday.  The response I got from Mr.
19  Hardison on Tuesday after I reminded him of my request was:
20  TOM Shipping's position is you now have enough information to
21  know that the funds that were attached belong to TOM Shipping.
22  If he had given me on Tuesday the document that he now puts
23  before the Court in his reply papers stating that the money was
24  transferred in from another TOM Shipping account, I would have
25  asked him on Tuesday for the origin or source of it.  That's
```

SOUTHERN DISTRICT REPORTERS, P.C.

(212) 805-0300

22

84A8HAWC

1    the language I used in my request on Monday.  I want to know
2    what the origin or the source of the funds is.  Not that it was
3    simply transferred from another TOM Shipping account, how did
4    this money come into TOM Shipping's hands.
5              MR. HARDISON:  I think counsel is reaching, and I
6    think his client is reaching.
7              THE COURT:  It seems to me the Court's decision
8    shouldn't turn on things such as is TOM Shipping operated out
9    of someone's home?  It's just not that staggering either way.
10   But the way to truly bring this to an end is to learn what the
11   source of the funds are and just to see if it traces back to
12   any of these defendants.  If it doesn't, it doesn't.  In other
13   words, I am not going to say that because two companies use the
14   same broker, therefore they must be related.
15             These are issues that raise questions.  There is one
16   way to put it to bed, and that seems to me to be the best thing
17   to do, because right now I can't tell you how I am going to
18   rule, and I can tell you that I am not ruling by tomorrow or
19   the next day because I am just really too jammed.  So it can be
20   brought to an end faster than my review of this material again
21   and checking the cases and sort of seeing on what side of the
22   line does this all fall.
23             MR. HARDISON:  If I may speak, your Honor?  I can
24   certainly pass along your view and see if there is some other
25   way that we can work this out other than having you have to --

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

23

84A8HAWC

1      THE COURT:  I am not trying to avoid the work.  I am
2  just sort of saying there is something that is more definitive
3  than anything I can say.  I pick one side or the other.
4  Somebody goes up on appeal.  It takes time.  It isn't that I
5  have not ruled on these type of issues before.  I have.  But
6  it's more of a scientific way to resolve it rather than leaving
7  it as a matter of judgment, How does this fact weigh in the
8  picture?  In this context, how much reliance can we place on
9  this hearsay?  That's all I am saying.
10      MR. HARDISON:  May I speak?
11      THE COURT:  Yes.
12      MR. HARDISON:  Two things here.  I understand that the
13  bank that transferred the money to the Haspa Bank deals with
14  the Iranians and that people use that bank because things
15  happen faster using that bank if you're dealing with Iran than
16  if you're dealing with just a regular German bank.
17      So let's assume that the funds came from company ABC
18  in Iran to the bank in Germany and then were transferred from
19  the Iranian bank in Germany to the Haspa Bank.
20      Now, ABC is not one of the defendants and is in no way
21  connected with one of the defendants.
22      THE COURT:  Then you have won.
23      MR. HARDISON:  Not necessarily.  I would hope so, but
24  what I expect to happen is he is going to say, Who gave the
25  money to ABC?  How do we know it didn't come from Mos?
                SOUTHERN DISTRICT REPORTERS, P.C.
                        (212) 805-0300

24

84A8HAWC

1          MR. HEARD:  There would have to be an end to our
2     legitimate inquiries, your Honor, but I don't think we are
3     there yet.
4          MR. HARDISON:  Where is it going to be?
5          MR. HEARD:  The source of the funds is not suspicious.
6     If it's not one of the named defendants in this case, if it's
7     not a Majdpour company, it's over, isn't it?
8          THE COURT:  I think it's over.
9          MR. HARDISON:  That's fine with me.
10          THE COURT:  We are all in agreement as to where the
11     game comes to an end.
12          MR. HARDISON:  That's fine, your Honor, as long as we
13     have got a cutoff point.
14          THE COURT:  We have got a cutoff point.
15          MR. HEARD:  Thank you.
16          THE COURT:  Very good.  Thank you.  You will let me
17     know.
18          MR. HARDISON:  Will do.
19          MR. HEARD:  I apologize.  I just want to make you
20     aware of one other development that has happened today.  There
21     are two cases against the Overseas defendants.  There is a case
22     before you and there was a case before Judge Batts.  The
23     complaint in the case before Judge Batts is Exhibit A to my
24     declaration.
25          THE COURT:  Oh, OK.  I probably didn't look at that.
                    SOUTHERN DISTRICT REPORTERS, P.C.
                            (212) 805-0300

25

84A8HAWC

```
 1              MR. HEARD:  That's fine, your Honor.
 2              TOM Shipping has made a similar motion in that case.
 3    The plaintiff in that case filed an amended complaint this
 4    morning and Judge Batts denied TOM Shipping's motion as moot.
 5    I have a copy of the order that she entered today if you would
 6    like.  Mr. Hardison has it already.
 7              THE COURT:  Did Judge Batts hear argument like this?
 8              MR. HARDISON:  No, she didn't.  So she is quite
 9    unaware of our side of the situation here.  That may change.
10    We will see.
11              MR. HEARD:  They filed motion papers before Judge
12    Batts.  She is aware of it because she says in her order that
13    she denies the motion as moot.
14              I would like to hand that up to the Court.
15              THE COURT:  I would appreciate that.
16              OK.  Thank you.
17              (Adjourned)
18
19
20
21
22
23
24
25
```

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300