```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------
HAWKNET LTD.,
                                          :
                    Plaintiff,
                                          :
         - against -                      :    MEMORANDUM and
                                                  ORDER
OVERSEAS SHIPPING AGENCIES; OVERSEAS       :
WORLDWIDE HOLDING GROUP; HOMAY GENERAL          07 Civ. 5912 (NRB)
TRADING CO. LLC; MAJDPOUR BROS CUSTOMS     :
CLEARANCE; MAJDPOUR BROS INTERNATIONAL
SEA & LAND TRANSPORT S.A.; GULF            :
OVERSEAS LLC; GULF OVERSEAS GENERAL
TRADING LLC; and MOS OVERSEAS SHIPPING     :
VERMITTLUNG GMBH,
                                          :
                    Defendants.
---------------------------------------X
```

**NAOMI REICE BUCHWALD**
**UNITED STATES DISTRICT JUDGE**

Before this Court are cross-motions by non-party TOM Shipping Vermittlung GMHB ("TOM") and the plaintiff, Hawknet Ltd. TOM has moved for an order vacating an attachment of $2,406,195 of its funds, which were seized as the result of a Process of Maritime Attachment and Garnishment (the "Order of Attachment") that this Court authorized under Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims ("Supplemental Rules"). Plaintiff in turn has cross-moved for an order for leave to amend its complaint to add TOM as a defendant because of its alleged alter-ego relationship with the other defendants. For the reasons set forth below, TOM

1

Shipping's motion is granted in part and plaintiff's motion is granted.

## BACKGROUND

This case arises out of an agreement between plaintiff and defendant Overseas Shipping Agencies ("OSA"), as charterer, to charter three of plaintiff's vessels to carry steel plate from Poland to Iran. OSA defaulted on the contract after only one of the three voyages and plaintiff filed suit against defendant and numerous related companies, obtained a Rule B attachment, and began serving that Order on various banks in this district. See Amend. Verified Compl. ("Compl.") ¶ 14-27.

It is alleged that OSA and the other named defendants, including MOS Overseas Vermittlung GMHB ("MOS"), are controlled and operated by Sina Majdpour and his brothers. Plaintiff alleges that the defendants took "evasive action" after it had modest success in attaching funds from MOS in September, 2007. Pl. Br. 4. According to plaintiff, Asadollah Rahimzadeh, a manager at MOS, set up TOM Shipping a day after that attachment. The other shareholders were two women who plaintiff believes are members of the Majdpour family.[1] See Declaration of Matthias Bimschas in Opp'n to Mot. to Vacate Attachment and in Supp. of

---

[1] Plaintiff's investigator, Matthias Bimschas, went to the residential address listed for these women in TOM's articles of association and did not find any name-plate with their names. However, the name "Majdpour" was listed at that address.

2

Cross-Mot. to Amend (Bimschas Decl.) ¶ 9, Exs. H, I, J, K.  TOM maintains that it is unrelated to MOS or any other defendant.

The events resulting in the instant motions began on March 17, 2008, when TOM initiated a wire-transfer of $2,406,195 through the Bank of New York to pay freight charges due in connection with another charter transaction involving the ship M/V Joudi (the "Joudi Charter").  Declaration of Asadollah Rahimzadeh in Supp. of Mot. to Vacate Attachment ("Rahimzadeh Decl.") ¶ 5.  The funds were attached because the wire transfer contained both TOM and MOS's names.  While plaintiff contends that this is evidence that TOM and MOS are the same entity, TOM responds that this is simply the result of a mix-up originating with its bank in Hamburg called HASPA.  TOM explains that MOS's address was inadvertently provided to HASPA by Rahimzadeh when he set up TOM's new account.  According to Rahimzadeh – the former chartering manager at MOS – he did not yet have business cards for his new business and therefore gave the bank his old MOS card at the time he opened the account.  He contends that he informed HASPA of TOM's true address but that it erroneously used his former MOS address for the wire transfer.  Id. ¶¶ 9-11. For its part, HASPA has written a letter corroborating Rahimzadeh's account.  Id. ¶ 9, Ex. 7.

3

On April 10, 2008, we held a hearing pursuant to Supplemental Rule E(4)(f).[2] The parties had exchanged some discovery beforehand and had traded numerous letters about the evidence concerning the relationship between TOM and MOS. The latter part of the hearing focused on the source of the attached funds and plaintiff's attorney agreed that if the funds came from an entity unrelated to MOS or the Majdpours, then TOM should prevail on its motion.

After the hearing, TOM provided evidence that the attached funds originally came from Agricultural Support Services Co. ("ASSC"), which was the purchaser of the goods being shipped in the Joudi Charter. Specifically, the funds came from a TOM account at another German bank: eihbank. Those funds were made available to TOM after ASSC opened a letter of credit in favor of TOM at its Iranian bank. April 18, 2008 Declaration of Michael O. Hardison in Support of Motion to Vacate Attachment ("Hardison Decl.") ¶ 5. Not satisfied with this explanation, plaintiff requested TOM's account statement from eihbank, which TOM produced. The parties initially disputed the nature of the transactions reflected in the statement, but TOM's view appears to be the proper interpretation. Its position -- supported by a letter from eihbank -- is that the statement shows a $2,406,195

---

[2] This rule allows any person whose property has been attached pursuant to Rule B an opportunity to appear before the district court to contest the attachment.

4

(€1,600,000) debit from TOM's eihbank account to TOM's HASPA account on the same day that the identical amount was wired from the HASPA account to the Bank of New York and attached.[3] Hardison Decl. ¶¶ 12-13, Ex. 4 (letter from eihbank explaining the transaction). The upshot is that funds were made available to TOM by ASSC and not by a Majdpour entity as plaintiff suspected.

If we held plaintiff's counsel to his agreement at the end of the April 10, 2008 hearing, the evidence produced from eihbank establishing that the funds attached did not originate from any of the named defendants would end our inquiry and resolve the pending motions. However, our research leads us to the conclusion that counsel's offer was ill-advised as the burden on a plaintiff alleging alter ego status in the context of a maritime attachment is lower than the one which apparently motivated plaintiff's counsel. Under these circumstances, we are reluctant to hold plaintiff to its counsel's agreement.

---

[3] Before TOM provided this explanation to the Court, plaintiff had argued that debit of $2,406,195 was actually a credit. Therefore, it contended, the transfer on March 17, 2008 could not have originated from TOM's eihbank account because money only flowed into that account on that date, not out of it. Letter of Keith W. Heard to Court, dated April 17, 2008. While plaintiff has not explicitly conceded that this position was wrong, it has not responded to TOM's explanation.

5

## DISCUSSION

### I. Legal Standard

To sustain its maritime attachment, plaintiff must "meet the filing and service requirements of Rules B and E" and show that "1) it has a valid prima facie admiralty claim against the defendant; 2) the defendant cannot be found within the district; 3) the defendant's property may be found within the district; and 4) there is no statutory or maritime law bar to the attachment." Aqua Stoli Shipping Ltd. v. Gardner Smith Pty Ltd., 460 F.3d 434, 445 (2d Cir. 2006).[4]

TOM argues that plaintiff cannot meet its burden because plaintiff did not name TOM in its complaint.[5] TOM Br. 2 (citing T & O Shipping, Ltd. v. Source Link Co., Ltd., No. 06 Civ. 7724 (KMK), 2006 WL 3513638, at *4 (S.D.N.Y. Dec. 5, 2006)("Rule B limits the scope of an attachment to a defendant who is named in a verified complaint")). While this may be technically

---

[4] The Aqua Stoli decision has been the subject of considerable recent discussion in this district. As we explained in Fesco Ocean Mgmt. Ltd. v. High Seas Shipping Ltd., No. 06 Civ. 1055 (NRB), 2007 WL 766115, at *2 (S.D.N.Y. March 12, 2007), prior to that decision, it had been suggested that a plaintiff needed to present "reasonable grounds" for sustaining an attachment. However, we read Aqua Stoli as "strongly suggest[ing] that courts should limit their Rule B inquiries to whether the plaintiff has stated a prima facie basis for the maritime attachment at issue." Id. (citations omitted). Subsequent decisions have agreed with this conclusion. See, e.g., OGI Oceangate Transp. Co. Ltd. v. RP Logistics PVT. Ltd., No. 06 CIV. 9441 (RWS), 2007 WL 1834711, at *4 (S.D.N.Y. June 26, 2007).

[5] TOM also points out that plaintiff did not show that TOM cannot be found within the district and that TOM's property is located in the district. See TOM Br. 2-3.

accurate, the central issue presented by the parties' motions is whether plaintiff has adequately alleged that TOM is the alter-ego of MOS. If it has, then this would constitute a prima facie showing and would entitle plaintiff to amend its complaint and obtain a new order of attachment effective against TOM. See Tide Line, Inc. v. Eastrade Commodities, Inc., No. 06 Civ. 1979 (KMW), at 43 (S.D.N.Y. Aug. 15, 2006)(vacating attachment but staying release of funds and granting leave to amend the complaint and file a new order of attachment). Thus, although we must vacate the attachment regardless of the relationship between TOM and MOS, that relationship, or lack thereof, will dictate the consequences of the vacatur.

To summarize: If plaintiff has not adequately alleged that TOM is the alter ego of MOS, then we will vacate the attachment effective immediately and deny plaintiff's cross-motion to amend. However, if plaintiff has adequately alleged alter ego status, we will stay the release of the funds in order to allow plaintiff to amend its complaint to add TOM as a defendant and thereby renew the attachment under the Supplemental Rules.[6]

---

[6] As Chief Judge Wood explained in Tide Line, it is unclear that this maneuver is required. Indeed, she suggested that it might serve the interests of "judicial efficiency" to "keep[] the attachment in place, in light of the amendments to the Verified Complaint." No. 06 Civ. 1979 at 37-38. Nevertheless, Chief Judge Wood decided the most appropriate procedure was to require the plaintiff to file its amended complaint, re-file another order of attachment, and then serve that order on the bank in question. See id. She ordered this to occur within ten days of her ruling.

7

## II. Plaintiff's *Prima Facie* Showing

The Supplemental Rules contain a heightened pleading standard: the complaint must "state the circumstances from which the claim arises with such particularity that the defendant or claimant will be able, without moving for a more definite statement, to commence an investigation of the facts and to frame a responsive pleading." Fed. R. Civ. P. Supp. R. E(2)(a). "Maritime plaintiffs, however, are not required to prove their case" on a Rule E(4)(f) motion. T & O Shipping, 2006 WL 3513638, at *2 (citations omitted). Moreover, we think plaintiff may properly rely on allegations in submissions other than the complaint to make a *prima facie* showing.[7] See Tide Line, Inc., No. 06 Civ. 1979 at 13-16. In this case, plaintiff has submitted a Proposed Second Amended Verified Complaint and supporting affidavits, which we will consider.

### A. Alter Ego Status

In admiralty disputes, federal courts apply federal common law when analyzing corporate identity. Status Int'l S.A. v. M & D Maritime Ltd., 994 F.Supp. 182, 186 (S.D.N.Y. 1998)(citing Dow

---

[7] Although this is an "open question," Brave Bulk Trans. Ltd. v. Spot on Shipping Ltd., No. 07 Civ. 4546 (CM), 2007 WL 3255823, at *6 (S.D.N.Y Oct. 30, 2007), we believe that ignoring a record containing such submissions would not serve the interests of judicial efficiency. Vacating attachments in the face of substantial new allegations would simply force plaintiffs to file a duplicate action after its initial action is dismissed, exalting form over substance and allowing potentially validly attached funds to escape the jurisdiction.

8

Chemical Pacific Ltd. v. Rascator Maritime S.A., 782 F.2d 329, 342 (2d Cir. 1986)). "Federal common law allows piercing of the corporate veil where (1) a corporation uses its alter ego status to perpetrate a fraud or (2) where it so dominates and disregards its alter ego's corporate form that the alter ego was actually carrying on the controlling corporation's business instead of its own." Id. (citations omitted). When assessing whether a plaintiff has adequately plead an alter ego theory of liability, courts consider a number of factors:

> (1) disregard of corporate formalities; (2) inadequate capitalization; (3) intermingling of funds; (4) overlap in ownership, officers, directors, and personnel; (5) common office space, address and telephone numbers of corporate entities; (6) the degree of discretion shown by the allegedly dominated corporation; (7) whether the dealings between the entities are at arms length; (8) whether the corporations are treated as independent profit centers; (9) payment or guarantee of the corporation's debts by the dominating entity, and (10) intermingling of property between the entities.

MAG Portfolio Consultant, GMBH v. Merlin Biomed Group LLC, 628 F.3d 58, 63 (2d Cir. 2001).

In this case, plaintiff alleges that many of these factors are present. In response, TOM characterizes these allegations as "conclusory, speculative and baseless." TOM Reply Br. 1. While we acknowledge that TOM has shown at least one of plaintiff's suppositions -- i.e., that the source of the

9

attached funds was not a Majdpour entity -- to be false we cannot accept TOM's invitation to require plaintiff to do more than make the prima facie showing required by Aqua Stoli. See TOM Reply Br. 3; supra n. 4. "[T]he Court must not decide, at this point, whether [plaintiff] has advanced sufficient evidence to support [its alter ego claim], or whether [TOM] has rebutted such evidence through its own submissions." Tide Line, No. 06 Civ. 1979 at 36 n.25. Instead, we must simply determine whether the allegations in the Proposed Second Amended Verified Complaint allege an alter-ego relationship between TOM and MOS with particularity.

The Proposed Second Amended Verified Complaint contains the basic allegations needed to support plaintiff's alter ego theory. See Tide Line, No. 06 Civ. 1979 at 32 (noting that the initial complaint contained just one allegation about the relationship between the two defendants and did not even include the phrase "alter ego"). Here it is alleged, for example, that:

> 39. Upon information and belief, the Majdpour Brothers control and dominate the activities and affairs of the defendants [including TOM] . . . . Although none of the Majdpour brothers are directors of TOM, they have a family relationship with one of the directors, Ms. Rasa Amlashi, and control the activities of the other director, Mr. Asadollah Rahimzadeh, who has worked for them at MOS and may still do.
>
> 40. Upon information and belief, at all material times, there existed such a unity

> of ownership and interest between Defendant OAS [a known Majdpour company] and the remaining defendants that no separation exists between them and the corporate form of all the defendants has been disregarded such that the Majdpour Brothers use the defendants interchangeably, without regard for their purported legal separateness, such that one company transacted the business of another and vice versa.
>
> 41. Upon information and belief, at all material times, the defendants have overlapping ownership, management, personnel and purposes such that the defendants do not operate at arm's length from each other but instead operate in concert and for their mutual benefit.
>
> * * *
>
> 43. Upon information and belief, at all material times, the Majdpour Brothers have disregarded the corporate form of the defendants to the extent that the defendants were treated as alter egos of one another without any regard for their alleged corporate separateness.

Decl. of Keith W. Heard in Opp'n to Mot. to Vacate Attachment and in Supp. of Cross-Mot. to Amend ("Heard Decl.") Ex. K.

More important than these generalized statements, plaintiff has made particularized allegations. In discussing them, we also cite the supporting evidence plaintiff has provided. We do so for the sake of completeness but not to express a view as to the weight of the evidence at this point. Three specific allegations are worthy of special attention. First, based on listings in an on-line business guide, plaintiff alleges that

11

MOS and TOM have the same address. Id. at Ex. K ¶ 32; Exs. F, G. Second, based on its investigator's discovery of a "Majdpour" name-plate at the residence of one of the purported TOM shareholders, plaintiff alleges overlapping ownership. Id. at Ex. K ¶ 38; Exs. F, G. Third, plaintiff alleges that the wire transfer itself was made on behalf of TOM "c/o MOS Overseas Shipping Vermittlung GmbH, Neuer Wall 8, D-20354, Hamburg," which shows a lack of corporate separateness.[8] Id. at Ex. K ¶ 33.

Two of plaintiff's other allegations also deserve attention. The first is that the ships TOM purportedly owns are actually owned by the Majdpours. The Proposed Second Amended Verified Complaint already contains circumstantial evidence of this fact: one of these ships is insured by Steamship Mutual Underwriting Association (Bermuda) and one of the transfers previously attached pursuant to the process issued in this case was a transfer from MOS to that insurance company. Id. at Ex. K ¶ 34, D, J. Second, plaintiff's allegation that TOM's partial owner Mr. Rahimzadeh was and still is an employee of the Majdpours has some import. Id. at Ex. K ¶ 37.

---

[8] While the documentation from the wire transfer has not yet been provided to the Court, TOM's explanation for the attachment acknowledges that MOS's address was entered into TOM's account information at HASPA.

Beyond the Proposed Second Amended Complaint, plaintiff has offered hearsay evidence to bolster its alter ego theory.[9] While we agree with TOM that such evidence has dubious reliability, we mention it here because it further demonstrates that plaintiff's attorney "has a good faith basis for alleging" that TOM is the alter ego of MOS and other Majdpour companies. See Brave Bulk Trans. Ltd. v. Spot on Shipping Ltd., No. 07 Civ. 4546 (CM), 2007 WL 3255823, at *6 (S.D.N.Y. Oct. 30, 2007). Whether plaintiff is able to prove its theory is a question for another day.

In sum, the allegations in the Proposed Second Amended Complaint are not "wholly conclusory." See TOM Reply Br. 2 (citing Brave Bulk, 2007 WL 3255823 at *6). Plaintiff has provided particularized allegations that TOM and MOS use the

---

[9] A report by Gray Page Intelligence Services Limited makes the following conclusions:

> The broker for TOM for the Joudi transaction has also served as a broker for Majdpour companies;
>
> Defendant OSA purchased the cargo being transported in the Joudi transaction; and
>
> The Majdpour family controls the vessels TOM Ship 1 and TOM Ship 2.

Id. at ¶ 5, Ex. B. In addition, plaintiff's chartering manager, William Cook, relates that he investigated TOM and was told by various people involved in the Joudi transaction that the Majdpours owned the TOM ships, that a company called "something like Overseas" was involved in the Joudi transaction, and that the same company was handling the Joudi at its destination port. Decl. William Robert Cook in Opp'n to Mot. to Vacate Attachment and in Supp. of Cross-Mot. to Amend, ¶¶ 3-5.

same address, employ the same personnel and agents, are owned by members of the same family, and share assets. See Tide Line, No. 06 Civ. 1979 at 35 (sustaining an attachment based on allegations of common ownership, shared employees, and the performance of corporate functions by one company on behalf of the other); see also T & O Shipping, 2006 WL 3513638, at *8 (noting that on company took an "active role in the charter" of the other). Accordingly, plaintiff's motion to amend the complaint to add TOM as a defendant is granted.

**B.   Relief and Discovery Schedule**

Having determined that plaintiff has sufficiently alleged alter ego status, we will vacate the attachment but stay the release of the funds under Tide Line so that plaintiff can effect a new attachment.[10] This appears to be the fairest course

---

[10] In T & O Shipping, the court refused to grant this relief because, unlike in Tide Line, plaintiff's alter ego allegations were not based on "newly discovery evidence that supported piercing the corporate veil." 2006 WL 3513638 at *7. Here, in stark contrast, plaintiff could not have named TOM because it was not in existence when it filed the complaint against the Majdpour companies. Indeed, the crux of plaintiff's argument is that TOM was formed to avoid the Order of Attachment that issued from its complaint.
  T & O Shipping also expressed concerns about the due process implications of maintaining an attachment against a company that had not been named in the complaint. 2006 WL 3513638 at *7 (noting that there were no such problems in Tide Line because both defendants were named in the original complaint). However, we do not believe staying the release of TOM's funds presents a due process problem because the attached funds were transferred by a wire that apparently contained the address and name of MOS, which is a named defendant. Therefore, this Court has a sufficient basis to maintain control over the funds.

of action because it will prevent the funds from escaping plaintiff's reach.

However, to ensure that TOM's funds are not sequestered for an excessive period of time if the attachment should be finally vacated, the parties are to complete discovery on whether TOM is properly named as a defendant within 60 days. Given that plaintiff has already conducted a substantial investigation and has received discovery from TOM -- including the eihbank evidence which contradicts plaintiff's alter ego allegation -- it should be able to prove, or not, the alter ego relationship between TOM and the Majdpour entities in that time.

## CONCLUSION

For the foregoing reasons, we grant TOM's motion to vacate the attachment of its funds, grant plaintiff's motion for leave to amend the complaint, direct plaintiff to file a Second Amended Verified Complaint with a new request for an Order of Attachment against TOM by May 1, 2008, and stay the release of the attached funds pending the issuance of a new Order of Attachment against TOM in connection with the Second Amended Verified Complaint and the serving of a new writ of attachment on the bank, so long as the writ of attachment is served by May 5, 2008. We further direct the parties to complete discovery 60 days on the issue which is the subject of this decision.

SO ORDERED.

Dated:   New York, New York
         April 29, 2008

NAOMI REICE BUCHWALD
UNITED STATES DISTRICT JUDGE

    Copies of the foregoing Order have been mailed on this date to the following:

**Attorney for Plaintiff**
Keith W. Heard, Esq.
Burke & Parsons
100 Park Avenue
New York, NY 10017-5533

**Attorney for TOM**
Michael O. Hardison, Esq.
Eaton & Van Winkle LLP
3 Park Avenue
New York, NY 10016-2078