Keith W. Heard (KH-8578)
Burke & Parsons
100 Park Avenue
New York NY 10017-5533
(212) 354-3800



UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| HAWKNET LTD., <br><br>                **Plaintiff,** <br><br>   -against- <br><br> **OVERSEAS SHIPPING AGENCIES; OVERSEAS WORLDWIDE HOLDING GROUP; HOMAY GENERAL TRADING CO. LLC; MAJDPOUR BROS CUSTOMS CLEARANCE, MAJDPOUR BROS INTERNATIONAL SEA & LAND TRANSPORT S.A.; GULF OVERSEAS LLC; GULF OVERSEAS GENERAL TRADING LLC, MOS OVERSEAS SHIPPING VERMITTLUNG GMBH and TOM SHIPPING VERMITTLUNG GMBH,** <br><br>                **Defendants.** | **SECOND AMENDED VERIFIED COMPLAINT** <br><br> **07 CV 5912 (NRB)** |

    Plaintiff, HAWKNET LTD. (hereinafter "Plaintiff"), by its attorneys Burke & Parsons, as and for its Second Amended Verified Complaint against Defendants, OVERSEAS SHIPPING AGENCIES; OVERSEAS WORLDWIDE HOLDING GROUP; HOMAY GENERAL TRADING CO. LLC; MAJDPOUR BROS CUSTOMS CLEARANCE, MAJDPOUR BROS INTERNATIONAL SEA & LAND TRANSPORT S.A.; GULF OVERSEAS LLC; GULF OVERSEAS GENERAL TRADING LLC, MOS OVERSEAS SHIPPING VERMITTLUNG GMBH and TOM SHIPPING VERMITTLUNG GMBH, alleges upon information and belief as follows:

1.    This action involves a claim for the breach of a maritime contract, which is an admiralty and maritime claim within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure. This action also arises under the Court's admiralty and maritime jurisdiction pursuant to 28 U.S.C. § 1333.

### THE PARTIES

2.    At all times relevant hereto, Hawknet Ltd. was and still is a foreign corporation organized and existing under and by virtue of the laws of England with an office and place of business at 27-37 St. George's Road, Wimbledon SW19 4EU, England

3.    At all times relevant hereto, Defendant Overseas Shipping Agencies ("OSA") was and still is a corporation organized and existing under and by virtue of the laws of a foreign country with an office and place of business at 2nd Floor, Kafrang Bldg., No. 135, North Kheradmand Avenue, Tehran 15859, Iran.

4.    At all times relevant hereto, Defendant Overseas Worldwide Holding Group was and still is a corporation or other business entity organized and existing under and by virtue of the laws of a foreign country with an office and place of business at 2nd Floor, Kafrang Bldg., No. 135, North Kheradmand Avenue, Tehran 15859, Iran.

5.    At all times relevant hereto, Defendant Majdpour Bros Customs Clearance ("MBCC") was and still is a corporation or other business entity organized and existing under and by virtue of the laws of a foreign country with an office and place of business at 2nd Floor, Kafrang Bldg., No. 135, North Kheradmand Avenue, Tehran 15859, Iran.

6.    At all times relevant hereto, Defendant Majdpour Bros International Sea & Land Transport S.A. ("MBISLT") was and still is a corporation organized and existing under and by virtue of the laws of a foreign country with an office and place of business at 2nd Floor, Kafrang Bldg., No. 135, North Kheradmand Avenue, Tehran 15859, Iran.

7.    At all times relevant hereto, Defendant Homay General Trading Co., LLC ("Homay") was and still is a corporation organized and existing under and by virtue of the laws of a foreign country with an office and place of business at P.O. Box 26370/52370, Dubai, United Arab Emirates.

8.    At all times relevant hereto, Defendant Gulf Overseas LLC ("GOL") was and still is a corporation organized and existing under and by virtue of the laws of a foreign country with an office and place of business at P.O. Box 41309, Dubai, United Arab Emirates.

9.    At all times relevant hereto, Defendant Gulf Overseas General Trading LLC ("GOGT") was and still is a corporation organized and existing under and by virtue of the laws of a foreign country with an office and place of business also at P.O. Box 41309, Dubai, United Arab Emirates.

10.    At all times relevant hereto, Defendant MOS Overseas Shipping Vermittlung GmbH ("MOS") was and still is a corporation or other business entity organized and existing under and by virtue of the laws of a foreign country with an office and place of business at Neuer Wall 8, D-20354, Hamburg, Germany.

11.    Defendant TOM Shipping Vermittlung GmbH ("TOM") is a corporation or other business entity organized and existing under and by virtue of the laws of a foreign country with an office and place of business at Neuer Wall 8, D-20354, Hamburg, Germany.

## THE CLAIMS

12.    Pursuant to a voyage charter party on an amended GENCON 1976 form dated at London on June 15, 2005 (the "Charter"), Plaintiff, as disponent owner, agreed to charter three vessels, the names of which were to be nominated, to Defendant OSA, as charterer, for the carriage of three cargoes of steel plate from Gdansk, Poland to Bandar Imam Khomeini, Iran.  A copy of the Charter is attached hereto as Exhibit A.

13.    At all times relevant hereto, Plaintiff was the disponent owner of the M/V MASTRO GIORGIS II (hereinafter the "Vessel"), the first vessel nominated for service under the Charter.  It turned out to be the only vessel nominated for service under the Charter because OSA defaulted in performing the balance of the contract.

14.    Under the terms of Clause 1 of the Charter, Defendant OSA bound itself to ship the cargo described as "total 75,000mt of steel plates in 3 cargoes of 25,000mts plates".  Pursuant to Box 9 of the Charter, the first part of the cargo should have been available for loading on July 1, 2005.  However, in breach of its duties, Defendant OSA failed to have cargo available for loading on July 1, 2005, resulting in delays to the

Vessel for which Plaintiff seeks to recover $78,800.16 by way of damages for detention.

15. Bills of lading for the first shipment were signed on July 12, 2005 and pursuant to various provisions of the Charter, Defendant OSA should have paid freight for cargo shipped on the Vessel in the amount of $1,362,199.15 by July 29, 2005, at the latest. However, said Defendant breached the Charter such that Plaintiff did not receive the freight until August 22, 2005. Accordingly, Plaintiff seeks to recover damages in the sum of $40,554.50 by way of interest for late payment of an amount due under the Charter.

16. Pursuant to Box 12 of the Charter, Defendant OSA contracted to nominate cargoes for two shipments in addition to the one that was transported on the Vessel. Further, under Clause 1 of the Charter, said Defendant bound itself to ship "the cargo", as described in Box 12, which is to say the entire program of three shipments. However, said Defendant only shipped one cargo of 25,000 metric tons of steel plate. As a result, Plaintiff suffered damages and claims deadfreight for the remaining cargo of 50,000 metric tons at the contractual freight rate of $55.25 per metric ton, for a total of $2,762,500.00.

17. As an excuse for nonperformance of the remaining two shipments under the Charter, Defendant OSA alleged that a company named "Safa" had terminated a contract with said Defendant for the remaining 50,000 metric tons of steel plate to be loaded at Gdansk. However, this is not true since Plaintiff determined that said Defendant arranged for another vessel, the M/V KONKAR THEO, to be chartered to carry the second cargo from Gdansk and for yet another vessel to carry the third and last cargo, both of which should have been shipped on tonnage provided by Plaintiff under the Charter, had Defendant OSA not defaulted on its obligations under that contract.

18. If Defendant OSA had performed the second and third voyages under the Charter, it would have owed Plaintiff freight in the total amount of $2,762,500.00. Plaintiff has calculated the expenses it likely would have incurred had it chartered in vessels and carried cargo for said Defendant on those two voyages. Subtracting those expenses from the freight that would have been owed by Defendant OSA, Plaintiff has determined that it suffered a loss, in terms of lost profits, of $804,980 on the second

voyage and a loss, again in terms of lost profits, of $813,665.00 on the third voyage. Thus, Plaintiff's lost profits on the two unperformed voyages add up to $1,618,645.00.

19.  As a result of Defendant OSA' breaches of the Charter, as set forth in paragraphs 14 – 18 above, Plaintiff has sustained damages in the total principal amount of $1,737,999.66, exclusive of interest, costs and attorneys' fees.

20.  Pursuant to Clause 21 of Part I and Clause 54 of the Additional Clauses of the Charter, all disputes arising thereunder are to be submitted to arbitration in London and are to be governed by English law.

21.  Plaintiff has previously commenced arbitration against Defendant OSA in accordance with the terms of the Charter.

22.  In addition to an attachment in the full principal amount of the claim as stated in Paragraph 18 above, Plaintiff also seeks an attachment over an additional sum to cover estimated interest as well as its anticipated attorneys' fees and costs, all of which are routinely recoverable under English law in London arbitration. (*See Winter Storm Shipping, Ltd. v. TPI*, 310 F.3d 263, 265 (2d Cir. 2002), where the attachment that the Court of Appeals reinstated covered "an amount that includes interest and anticipated attorneys' and arbitrators' fees.")

23.  Plaintiff estimates, as nearly as can be presently computed, these additional damages and costs to be $631,037.13, consisting of interest in the sum of $556,037.13 (computed on the principal amount sought at a rate of 7% for a period of four years, consisting of two years since the time  of Defendant OSA' breaches and failure to perform, plus an additional two years for the arbitration to run its course), and $75,000 in estimated U.K. counsel fees, costs, and arbitrators' fees, which will be incurred in conjunction with the London arbitration and which are recoverable there.

24.  Based upon the foregoing, therefore, the total sum sought to be attached in this action with respect to Plaintiff's claims is $2,369,036.79.

25.  For its part, Plaintiff has satisfied and performed all of its obligations under the terms of the Charter.

## RELATIONSHIPS AMONG THE DEFENDANTS

26.  Upon information and belief, all of the defendants are part of an Iranian business entity named Overseas Worldwide Holding Group, which once maintained a unified website at www.overseasgrp.com. In addition, the primary address and principal place of business for the Group is 2nd Floor, Kafrang Bldg., No. 135, North Kheradmand Avenue, Tehran 15859, Iran. The group is controlled and dominated by the Majdpour family, consisting of three brothers – i.e., Tofigh (also spelled "Tawfiq"), Majid and Naser Majdpour – and Tofigh's son Sina (hereinafter collectively "the Majdpours").

27.  Upon information and belief, the Majdpours use the various companies and business entities in the Group as interchangeable parts, depending on the business, commercial and legal needs of the Group at any given time.

28.  In the first voyage under the Charter, which is described in paragraphs 14 and 15 above, defendant OSA owed Plaintiff freight for cargo shipped on the Vessel in the amount of $1,362,199.15. However, that amount was not paid by said defendant but, pursuant to instructions from Sina Majdpour, was paid instead by defendant Homay, which Sina Majdpour described to Plaintiff in an email dated August 20, 2005 as "our offices in Dubai."

29.  Defendant Homay sent written payment instructions to its bank, the Commercial Bank of Dubai, on August 18, 2005. Although Homay confirmed that the bank would be "debiting our account", they also advised that this substantial transfer of funds was being made "BY ORDER OF: MAJDPOUR BROS."

30.  Upon information and belief, defendant Homay is simply a shell corporation dominated and used by the Majdpour Brothers to transact their business. Although Homay's letterhead stationery states that Homay maintains a website at www.whitekitchen.com, there is in fact no such website. Instead, that domain name is being offered for sale by www.buydomains.com.

31.  At least three of the defendant corporations conduct their business out of the same office in Teheran. Defendants Overseas Shipping Agencies, Majdpour Brothers Customs Clearance and Majdpour Brothers International Sea & Land Transport S.A. all operate out of an office on the 2nd floor of the Kafrang Building at No. 135, North

Kheradmand Avenue in Tehran, Iran. Upon information and belief, to the extent defendant Overseas Worldwide Holding Group operates as a going concern, it too operates out of the same office.

32. In addition, two other defendants, MOS and TOM, conduct their business out of the same office at Neuer Wall 8, D-20354, Hamburg, Germany.

33. The Majdpours, MOS and/or other defendants control TOM and use it for their own purposes. The Majdpours and/or the companies they control arranged for TOM to be established in whole or in part to avoid the effect of Process of Maritime Attachment and Garnishment that has issued in this action prior to the date of this Second Amended Verified Complaint. In addition, defendant OSA and/or MOS and/or the Majdpours arranged for TOM to charter the M/V JOUDI to carry a cargo of granular triple super phosphate from Selaata, Lebanon to Bandar Abbas, Iran in February and March of this year.

34. TOM paid freight on the JOUDI in U.S. dollars from funds in its account at Hamburger Sparkasse Bank ("HSB") in Hamburg. These funds were transferred to the account at HSB from an account TOM maintained at Europäisch-Iranische Handelsbank AG ("EIH") in Hamburg. At the time of this transfer from TOM's account at EIH to its account at HSB, there were no funds in the account at EIH and EIH extended credit to TOM to enable the transfer to take place.

35. Under German law, EIH could not extend credit to TOM (or any of its other customers) in an amount over €750,000 unless the bank had obtained proper financial information or had obtained either security or access to other sources of repayment. Specifically, German law requires the bank to (a) check the credit recipient's annual financial statements or (b) obtain either security or the agreement of suitable third parties to accept joint liability for repayment of the credit.

36. Since TOM was only established as a corporation in September of 2007, it does not yet have annual financial statements -- if it ever will. Upon information and belief, one or more of the defendants in this action, or one or more members of the Madjpour family who control and dominate the defendants, provided security to EIH Bank or accepted joint liability for repayment of the credit extended in connection with TOM's account there.

37.  Once funds were transferred from TOM's account at EIH to its account at HSB, TOM gave instructions to HSB to remit U.S. $2,406,195.00 to a company in Singapore from whom TOM, for the account or benefit of other defendants herein and/or the Majdpours, had chartered the JOUDI to transport the cargo described in paragraph 33 above.  However, the address shown for TOM in HSB's records was "c/o MOS Overseas Shipping Vermittlung GmbH, Neuer Wall 8, D-20354, Hamburg" and the presence of the MOS name on the electronic funds transfer caused it to be attached at the Bank of New York Mellon in accordance with Process of Maritime Attachment and Garnishment issued in this action.

38.  The Majdpour brothers have purchased two ships, the TOM SHIP 1 and the TOM SHIP 2, and have given them names to indicate that they are owned and operated by TOM when, in fact, they are controlled by OSA, MOS or other defendants or by the Majdpours themselves.  In January 2008, MOS attempted to remit funds to Steamship Mutual Underwriting Association (Bermuda) in connection with one of these vessels but the payment was detained in New York pursuant to Process of Maritime Attachment and Garnishment issued in this action.

39.  Stock in the defendant companies is owned directly or indirectly by the Majdpours.  Specifically, Tofigh Majdpour owns stock in defendants OSA, MBCC, MBISLT, GOL and MOS.  Majid Majdpour owns stock in defendants MBCC, MBISLT, GOGT and MOS.  Sina Majdpour owns stock in defendants OSA and GOL. Naser Jaffar Majdpour owns stock in defendant GOGT.

40.  Upon information and belief, all of the stock in defendant OSA is owned by Tofigh and Sina Majdpour.  All of the stock in defendants MBCC and MBISLT is owned by Tofigh Majdpour, Majid Majdpour and other Majdpour family members. All of the stock in defendant MOS is owned by Tofigh, Sina, Majid and Naser Jaffar Majdpour.

41.  MOS is operated by Tofigh Majdpour pursuant to a Power of Attorney given to him by his brothers Majid and Naser and his son Sina.  Tofigh Majdpour resides at Harvestehuder Weg 79, Hamburg 20149, Germany.

42.  All of the stock in TOM is owned by Mr. Asadollah Rahimzadeh, Ms. Rasa Soufi Amlashi and Ms. Akram Alizadeh Matanagh.  Until very recently (and perhaps even continuing to the present), Mr. Rahimzadeh was the Chartering Manager of

defendant MOS. The address he provides for TOM is his home but publicly-available sources indicate that MOS and TOM operate out of the same office.

43. According to TOM's articles of association, Ms. Rasa Soufi Amlashi and Ms. Akram Alizadeh Matanagh reside at Harvestehuder Weg 79, Hamburg 20149, Germany. Their names do not appear on any of the five nameplates at this address but the name "Majdpour" does. Upon information and belief, Ms. Amlashi and Ms. Matanagh are members of the same Majdpour family that dominates the affairs of all of the defendant corporations and they live in the same residence as Tofigh Majdpour.

44. Hussain Mohammed Ali Zadeh Matanagh is a shareholder in defendant GOGT, another company controlled by the Majdpours. Upon information and belief, Mr. Matanagh is related by blood or marriage to Ms. Akram Alizadeh Matanagh, one of TOM's shareholders.

45. Upon information and belief, the Majdpours control and dominate the activities and affairs of the defendants in their capacity as directors of said companies and/or otherwise. Specifically, Tofigh and Sina Majdpour are the only directors of defendants OSA and GOL. Majid and Tofigh Majdpour are the only directors of defendants MBCC, MBISLT and MOS. Finally, Majid and Naser Majdpour form a majority of the board of directors of defendant GOGT. Although none of the Majdpour brothers are directors of TOM, they have a family relationship with one of the directors, Ms. Rasa Soufi Amlashi, and control the activities of the other director, Mr. Asadollah Rahimzadeh, who has worked for them at MOS and may still do so.

46. Upon information and belief, at all material times, there existed such unity of ownership and interest between Defendant OSA and the remaining defendants that no separation exists between them and the corporate form of all the defendants has been disregarded such that the Majdpour Brothers use the defendant companies interchangeably, without regard for their purported legal separateness, such that one company transacted the business of another and vice versa.

47. Upon information and belief, at all material times, the defendants have overlapping ownership, management, personnel and purposes such that the defendants do not operate at arm's length from each other but instead operate in concert and for their mutual benefit.

48. Upon information and belief, at all material times, the Majdpours have dominated, controlled and used the defendant corporations for their own purposes such that there is no meaningful difference between these entities.

49. Upon information and belief, at all material times, the Majdpours have disregarded the corporate form of the defendants to the extent that the defendants were and are treated as alter egos of one another without any regard for their alleged corporate separateness.

## BASIS FOR THE ATTACHMENT

50. Upon information and belief, and after investigation, Plaintiff has determined that the Defendants cannot be "found" within this District for the purpose of Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims, but upon information and belief one or more of the Defendants has, or will have during the pendency of this action, assets within this District comprising, *inter alia,* cash, funds, credits, wire transfers, electronic funds transfers, accounts, letters of credit, freights, sub-freights, charter hire and/or sub-charter hire, of, belonging to, due or for the benefit of the Defendants (hereinafter "Assets"), moving through garnishee banking institutions including but not limited to ABN Amro; American Express Bank; Bank of America NA; Bank of New York; Citibank; Deutsche Bank AG; HSBC Bank USA NA; JP Morgan Chase Bank; Standard Chartered Bank; UBS AG, Wachovia Bank and/or Mashreq Bank.

51. The Plaintiff seeks an order from this Court directing the Clerk of Court to issue Amended Process of Maritime Attachment and Garnishment pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims, attaching, *inter alia,* any assets of the Defendants or any of them held by or in the custody or temporary possession of the aforesaid garnishees for the purpose of obtaining personal jurisdiction over the Defendants and to secure Plaintiff's claims as described above.

WHEREFORE, Plaintiff prays:

a.  That process in due form of law according to the usual practice of this Court may issue against Defendants citing them to appear and answer the foregoing, and failing such appearance and answer, to have judgment by default against the Defendants in the principal amount of the claim plus interest, costs and attorneys' fees;

b.  That since Defendants cannot be found within this District pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims, this Court issue an Order directing the Clerk of Court to issue Amended Process of Maritime Attachment and Garnishment pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims and also pursuant to the United States Arbitration Act, 9 U.S.C. §§ 1 and 8, attaching and restraining all Assets of Defendants in an amount up to and including the sum of $2,369,036.79, including but not limited to any cash, funds, credits, wire transfers, electronic funds transfers, accounts, letters of credit, freights, sub-freights, charter hire, sub-charter hire, and/or other assets of, belonging to, due or for the benefit of Defendants including, but not limited to such Assets as may be held, received or transferred in its own name or as may be held, received or transferred for its benefit at, moving through, or within the possession, custody or control of the aforesaid banking institutions including but not limited to ABN Amro; American Express Bank; Bank of America NA; Bank of New York; Citibank; Deutsche Bank AG; HSBC Bank USA NA; JP Morgan Chase Bank; Standard Chartered Bank; UBS AG, Wachovia Bank and/or Mashreq Bank and/or any other garnishee(s) upon whom a copy of the Amended Process of Maritime Attachment and Garnishment issued in this action may be served;

c.  That an Order be entered directing Defendants to proceed to London arbitration for the adjudication of the merits of the claims;

d.  That this Court retain jurisdiction over the matter for any further or supplemental proceedings as may be necessary in order to give effect to the aforesaid London arbitration; and

e.   For such other and further or different relief as this Court may deem just and proper in the premises.

Dated:   New York, NY
         May 1, 2008

                              BURKE & PARSONS
                              Attorneys for Plaintiff
                              HAWKNET LTD.

                              By   _Keith W. Heard_
                                   Keith W. Heard (KH-8578)
                                   100 Park Avenue
                                   New York NY  10017-5533
                                   (212) 354-3800

## VERIFICATION

STATE OF NEW YORK      )

COUNTY OF NEW YORK    )

     Keith W. Heard, being duly sworn, deposes and says:

1.    I am a member of the bar of this Honorable Court and of the firm of Burke & Parsons, attorneys for the Plaintiff.

2.    I have read the foregoing Second Amended Complaint and I believe the contents thereof are true.

3.    This Verification has been made by deponent and not by Plaintiff because Plaintiff is a foreign corporation, and has no officers or directors within this jurisdiction.

4.    The sources of my information and belief are documents provided to me and statements made to me by representatives of the Plaintiff.

_____
                  Keith W. Heard

Sworn to before me this

_1ST_ day of May, 2008

_____
               Notary Public

Penny S. Martinez
Notary Public State of New York
No. 01MA4865021 Qualified in Suffolk County
Certificate Filed in New York County
Commission Expires 29 September 2010

9000Conformed second amended complaint.doc

- 13 -